C. D. LAZIER, Plaintiff-Appellant-Cross Appellee,

v.

Richard W. WEITZENFELD, etc., et al., Defendants-Appellees-Cross Appellants.

No. 74-1792.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1975.

Morris W. Milton, St. Petersburg, Fla., for plaintiff-appellant.

John D. Pettigrew, Ralph H. Haben, Jr., Palmetto, Fla., James E. Thompson, Thomas T. Steele, Tampa, Fla., for defendants-appellees.

Before MORGAN and CLARK, Circuit Judges, and GORDON, District Judge.

PER CURIAM:

In his complaint Reverend C. D. Lazier sought damages for an alleged conspiracy to prevent him from exercising his right to express his views and to picket a place of public accommodation which employed a racially restrictive patronage policy. By a pre-trial stipulation, the contention was sharpened to assert a conspiracy to have plaintiff arrested because of his inquiries about the integration of this establishment. The complaint also included claims for false arrest and malicious prosecution. Upon the conclusion of an extensive hearing, the district court directed a verdict for the defendants. We affirm.

Examination of the tediously-tried, objection-filled transcript reveals that on at least one occasion prior to the night of his arrest Lazier, a Negro, had indeed threatened to integrate the premises of the Nook Bar, a public tavern, after being advised by its management that blacks were not served there, except for off-premises consumption. The reason plaintiff did not get his claims to the jury despite this favorable start, can be found in the remaining proof.

In the following statement of events which culminated in plaintiff's arrest, we have resolved all conflicts and inferences most favorably to plaintiff's position. Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969). Late in the night of August 1, 1971 Reverend Lazier was operating his automobile on the streets of Bradenton, Florida when he observed a widowed member of his congregation, Violet Thomas. He picked up Mrs. Thomas and they drove to the home of Shirley Murray, a friend of Mrs. Thomas, and asked her to go with them to "pick up a beer some place."[1] When Mrs. Murray accepted and joined the group she had her hair put up on rollers and was wearing a bathrobe.

No precise chronology for the pastor and his ladies was established, but at approximately 2:00 a.m. on August 2 the party arrived at the Nook Bar. Reverend Lazier ordered two or three cans of beer from the take-out window and then backed his car across the street onto the apron of a service station. At that point he noted a sheriff's patrol car drive onto the parking lot of the Nook Bar and decided to wait to see if the officer was "going to buy some whiskey or something." Instead the officer, after conversing with the manager, walked across the street and told Reverend Lazier, "These people [the operators of the Nook Bar] don't want your business there no more."

The following excerpts from the testimony of Reverend Lazier most aptly describe the next sequence of events:

Q. All right. Now, up to this point, may I assume that your reason for being there at the Nook was that you wanted to buy some beer?

A. Correct.

Q. That is the only reason you were there?

A. Eminently correct.

\* \* \* \* \* \*

Q. You didn't go there to picket; did you?

A. No sir.

Q. You didn't go there to express your views; did you?

A. I went there to get a beer.

\* \* \* \* \* \*

Q. All right, Reverend Lazier. As a matter of fact, isn't it true the reason you drove back there was simply because [Deputy Sheriff] Steve Abrams told you not to?

A. Well, I guess that is part of it. Nobody tells me where I can go, you know.

\* \* \* \* \* \*

Q. But he did tell you, "Don't go back on there because the people don't want you on there?"

---

1. The state of Mrs. Thomas' sobriety during the ensuing events is in conflict. However, she admitted having consumed several highballs earlier in the evening, was arrested for public drunkenness and did forfeit bail on this charge.

A. Yes.

Q. And you took that as a dare; didn't you?

A. Certainly so.

Q. And you took his dare, and you went back on there?

A. Eminently correct.

When Reverend Lazier drove back on the parking lot of the Nook Bar Deputy Sheriff Abrams arrested him for trespassing after warning, pursuant to Fla. Stat.Ann. § 821.01.

 In this case the law arises from the facts. The reasoning which brought about the Nook's call for assistance by the sheriff and its manager's request to Deputy Abrams to "bar" Reverend Lazier this night appears with less than crystal clarity. The Nook's sole employee at this hour stated that she became frightened when Lazier observed to her that the parking lot contained only one car other than her own and that it was almost closing time. She also testified she feared that if he came inside the bar and other customers came in, a fight might start. The Deputy Sheriff testified that when he arrived at the scene the barmaid told him that Reverend Lazier had asked her to go out with him. It is plain, however, that Reverend Lazier possessed absolutely no intention or purpose of desegregating the Nook Bar on this occasion, and no reasonable juror could have thought such would be his purpose. Indeed, Reverend Lazier himself testified that his intentions to picket the establishment would have involved conduct during daylight hours rather than at night. His companions on this occasion were among the most unlikely he could have selected for demonstrating against segregation. While the barmaid may have had his threats to integrate in mind when she asked Officer Abrams to prevent his return, that threat of action at another time had nothing to do with his 2:00 a. m. arrest. The proof established beyond

cavil that his arrest resulted when he "took the dare."

The District Judge correctly applied the law by directing a verdict on plaintiff's first count, which charged a conspiracy to prevent the exercise of plaintiff's rights of expression and to picket. The court also acted within the permissible ambit of its discretion in declining to continue to exercise pendent jurisdiction to try the remaining counts of the complaint, which asserted false arrest and malicious prosecution. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The judgment appealed from is

Affirmed.