**Rev. A.M. SEAMON, et al.**

v.

**Chet UPHAM, et al.**

**No. P–81–49–CA.**

United States District Court,
E.D. Texas,
Paris Division.

Feb. 14, 1983.

Leighton Cornett, Paris, Tex., for plaintiffs.

Kenneth Molberg, Dallas, Tex., for Juanita Craft, et al.

Luis M. Sequra, Jesse Roy Botello, San Antonio, Tex., for M. Garcia, A. Luna, A.

Gonzales, B. Eureste, R. Padilla, R. Palomo, M. Tamez, R. Cristan and H. DeHoyos.

William P. Clements, Jr., Austin, Tex., pro se.

Mark White, Atty. Gen., Austin, Tex., pro se.

Joaquin G. Avila, Mexican American Legal Defense and Educational Fund, San Antonio, Tex., for A. Garcia and J. Rodriguez.

George J. Korbel, Jose Camacho, Austin, Tex., Richard Gonzales, Alpha Hernandez, Rolando Menchaca, Texas Rural Legal Aid, Inc., Del Rio, Tex., Raul Noriega, Texas Rural Legal Aid, Inc., San Antonio, Tex., for B. Gonzales, A. Dolorosa and J. Adame.

Rafael Quintanilla, Jr., Austin, Tex., for Democratic Party of Texas.

James Allison, Asst. Atty. Gen., Austin, Tex., Richard E. Gray, III, Butler, Binion, Rice, Cook & Knapp, Austin, Tex., for Roger Peterson and Margaret Coplin.

John M. Harmon and R. James George, Jr., Graves, Dougherty, Hearon & Moody, Austin, Tex., for Eric Clifford and Chester Upham.

Bob Slagle, Sherman, Tex., pro se.

R.C. Slagle, III, Sherman, Tex., for Brady Fisher.

Steve Bickerstaff, Austin, Tex., for William Clement, Geo. Strake, State of Tex.

Before JOHNSON, Circuit Judge, JUSTICE, Chief District Judge, and ROBERT M. PARKER, District Judge.

## ORDER

JUSTICE, Chief Judge.

This 29th day of January, 1983, the motions of the plaintiffs for leave to file a supplemental complaint, for leave to add parties plaintiff, and for a preliminary injunction, are before the court for hearing. A motion to dismiss for want of proper venue has been filed by the Republican Party, a defendant.

Proper disposition of these motions hinges upon an understanding of the past history of this civil action. As originally filed on September 1, 1981, this case challenged the legality and constitutionality of an act of the Texas legislature, which apportioned Texas into twenty-seven congressional districts. Tex.Rev.Civ.Stat.Ann. art. 197f (Vernon 1981 Supp.); Senate Bill No. 1 ("S.B. 1"); Acts 1981, 67th Leg. of Texas, 1st C.S. (August 10, 1981). The plaintiffs charged that the Texas apportionment plan in various ways diluted minority voting strength, in violation of section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 (1976), and the fourteenth and fifteenth amendments to the Constitution of the United States.

On September 14, 1981, this three-judge court was constituted pursuant to 28 U.S.C. § 2284 (1976). On January 29, 1982, the Attorney General of the United States refused to "preclear" the Texas plan, and, instead, interposed objections to that plan, rendering it legally unenforceable. 42 U.S.C. § 1973c. In an opinion issued on February 27, 1982, this court ordered the adoption of a substitute statewide reapportionment plan in Texas, which was identical to that embodied by S.B. 1, except for modifications in the configurations of six districts—Districts Nos. 3, 5, 15, 24, 26, and 27. *Seamon v. Upham,* 536 F.Supp. 931 (E.D. Tex.1982). On appeal, the Supreme Court vacated the court-ordered plan, holding that parts of that plan had been predicated upon an erroneous legal theory. However, the Supreme Court also specifically empowered this court, on remand, to reinstitute its plan, despite its flawed provenance, because of practical considerations presented by the imminence of the primary and general elections. *Upham v. Seamon,* 456 U.S. 37, 102 S.Ct. 1518, 71 L.Ed.2d 725 (1982). On remand, this court ordered readoption of the imperfect plan, as a "temporary interim plan for the 1982 primary and general elections." *Seamon v. Upham,* 536 F.Supp. 1030, at 1035 (E.D.Tex.1982). This court also specifically retained jurisdiction over the case. 536 F.Supp. at 1035. The 68th Legislature of Texas has not yet enacted a remedial reapportionment plan of its own.

This civil action lay dormant from issuance of the order on remand until January 26, 1983, when the motions now *sub judice* were filed.

As noted previously, plaintiffs have moved for leave to file a supplemental complaint. It would add parties plaintiff and join claims that appear to have little to do with the matters that have been the subject of this lawsuit to date. The supplemental complaint tendered by plaintiffs emanates from the following fact situation. After the general elections of November 1982, the duly elected Representative of Congressional District No. 6 changed political affiliation (from the Democratic to the Republican Party) and, although not required to do so, resigned from office. The former Representative, Philip Gramm, intends to run for election as a Republican at the special election called to determine his successor. The Texas Election Code provides that special elections must be held on one of four official elections dates—the earliest being, in this case, the first Saturday in April—, unless the Governor determines that an emergency exists, in which case he may set an earlier date. Tex.Elec.Code Ann. art. 2.01b(b). (Vernon). On January 5, 1983, then-Governor Clements, a Republican, issued a proclamation, which included a finding that an emergency existed, and which set an accelerated election date of February 12, 1983. By the terms of the same proclamation, candidates who desired to have their names placed on the special election ballot were required to file their applications with the Texas Secretary of State no later than 5:00 p.m., on January 12, 1983.

Plaintiffs' proffered supplemental complaint avers that the setting of an emergency special election date is a change which is subject to preclearance under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c,

and which has not been so precleared. Furthermore, plaintiffs contend that the short period in which would-be candidates must file disparately burdens minority political participation, in violation of section 2 of the Voting Rights Act and the fourteenth and fifteenth amendments to the Constitution.

The supplemental complaint presented for acceptance plainly raises important issues that should be resolved by a federal district court. Nevertheless—and just as plainly—, this is not the correct court to address those issues.

Congressional District No. 6, which this dispute concerns, touches every federal judicial district of Texas except the Eastern District, wherein this case is filed. Were plaintiffs complaining of the special election date in an original complaint, we would clearly be obliged to consider the dismissal or transfer of this case for lack of venue.[1] 28 U.S.C. §§ 1391(b), 1404, 1406(a). Instead, plaintiffs seek to circumvent the venue obstacle, by asserting their claims in a supplemental complaint to an existing, though presently inactive, lawsuit, to which their claims bear only a tenuous relationship.

It has been held that where venue and jurisdiction already exist between original parties to a suit, a court has discretion to exercise "pendent venue" over a related claim joined under Rule 18(a), notwithstanding an ostensible lack of venue over that claim. *See Dolly Toy Co. v. Bancroft-Rellim Corp.,* 97 F.Supp. 531, 536 (S.D.N.Y. 1951); *Shelter-Lite, Inc. v. Reeves Bros., Inc.,* 356 F.Supp. 189, 196 n. 8 (N.D.Ohio 1973). *See also* 6 C. Wright and A. Miller, Federal Practice and Procedure § 1588 at 817 (1971); 15 C. Wright and A. Miller, *supra,* § 3808 at 43–44 (1976); 3A Moore's Federal Practice ¶ 18.10[4] (1982).[2] In exer-

---

1. Dismissal or transfer would be required, assuming that defendants did not waive the venue objection. Fed.R.Civ.P. 12(h)(1). *See,* fn. 3, *infra.*

2. One commentator suggests that the joinder provisions of the Federal rules have, to some extent, superseded 28 U.S.C. § 1391:

Questions of venue also arise when venue is proper for the original claim or claims between plaintiff and defendant and other claims are brought in subsequently under the liberal joinder devices the Civil Rules provide for counterclaims, cross-claims, impleader, interpleader, and intervention. When these additional claims are asserted against parties

cising its sound discretion in such a case, a court should consider the same factors that it would consider in deciding whether to exercise pendent jurisdiction. *See* C. Wright and A. Miller, *supra*, § 1588 at 817. Thus, it should consider whether the claims derive from a "common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, at 725, 86 S.Ct. 1130, at 1138, 16 L.Ed.2d 218 (1966), and whether the exercise of jurisdiction furthers the goals of judicial economy, convenience, and fairness to the litigants.[3] *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *A.H. Emery v. Marcan Products Corp.*, 389 F.2d 11 (2d Cir.1968), *cert. denied* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968).

While the controversy addressed in the proposed supplemental complaint involves the same parties and the same laws as the original dispute, it arises out of a completely discrete set of circumstances. The original dispute involved the legality and constitutionality of the boundaries of proposed voting districts established by S.B. 1 in August of 1981, while the supplemental complaint submitted by plaintiffs draws into question the legality and constitutionality of the Governor's proclamation of January 5, 1983, which set a date for a special election in District No. 6. Significantly, District No. 6 was not a source of disagreement in the original controversy, and, pursuant to stipulation by the parties, the court-ordered plan adopted for District No. 6 precisely the configuration S.B. 1 had prescribed for it. Plainly, the claims sought to be raised in the tendered supplemental complaint do not share a "common nucleus of operative fact" with those of the original complaint.

Furthermore, considerations of judicial economy, convenience, and fairness all militate against exercising pendent jurisdiction over the special election dispute. No judicial economy or convenience to the parties is achieved by resuscitating a three-judge court from out of dormancy, in order to have it hear a new and independent claim. In a somewhat analogous situation, courts have routinely refused to exercise pendent jurisdiction over state law claims where the federal claim has been dismissed prior to trial. *See, e.g., Gibbs*, 383 U.S. at 726, 86

---

to the original suit, no venue objection should be available. Since the main action satisfied the venue statutes, these additional claims asserted later need not. This is sound as a matter of policy. Since the parties are already present and litigating in the court, they are not inconvenienced by being required to litigate an additional claim. This is sound also on a literal reading of the venue statutes, which speak of where an "action ... may be brought." The action already has been brought in that court.

15 C. Wright and A. Miller, *supra*, § 3808 at 43.

This passage, although specifically referring to the joinder devices provided by Rules 13, 14, 22, and 24, also constitutes a cogent argument in support of pendent venue as a general doctrine. The passage further suggests, however, the inappropriateness of exercising pendent venue in the case now before us. Because the case was dormant—and may well become moot—, the parties were *not* "already present and litigating" before us at the time of the attempted joinder of claims; hence, there is no good reason to exempt plaintiffs from ostensible statutory venue requirements. Furthermore, the joinder of claims plaintiffs seek to effect, pursuant to Rules 15(a), 15(d), and 18, does not resemble the joinders provided for under Rules 13, 14, 22, and 24, since it is joinder of a relatively remote, discrete, and unrelated claim.

3. The "common nucleus of operative fact" test, as articulated in *Gibbs*, actually concerns the *power* of a federal court to exercise jurisdiction over a pendent state law claim, while the tests of judicial economy, convenience, and fairness guide a court's discretionary exercise of such jurisdiction. *See Gibbs*, 383 U.S. at 725–726, 86 S.Ct. at 1138–1139. A federal court's exercise of pendent *venue* over an additional *federal* law claim—the issue presented in the case before us—does not raise either the question of the power or the propriety of federal court actions, the questions that were implicated in *Gibbs*. Nevertheless, we assume that the "common nucleus of operative fact" test should retain some weight in our discretionary deliberations, because it, in itself, embodies factors that bear upon judicial economy, convenience, and fairness. That is, to the extent that a plaintiff's claims share "a common nucleus of operative fact," or, alternatively stated, to the extent that "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding," *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138, then it is likely that joinder of all such claims promote judicial economy, convenience, and fairness.

S.Ct. at 1139; *Bova v. Pipefitters & Plumbers Local 60, ACL–CIO,* 554 F.2d 226 (5th Cir.1977); *Lazier v. Weitzenfeld,* 505 F.2d 896, 898 (5th Cir.1975).

Moreover, giving cognizance to this supplemental complaint invites two categories of untoward legal repercussions that carry with them at least the appearance of unfairness. First, to hear this cause would permit the purposed plaintiffs in this case to circumvent established local rules and statutory procedures that have been adopted in order to discourage and hamper "forum shopping." If this complaint had been filed as an original, separate lawsuit, a lot would have been drawn to determine which of the two judges sitting in the division where that suit was filed would have been assigned the case. That judge, if he determined that it was appropriate, would have requested the Chief Judge of the Court of Appeals for the Fifth Circuit to convene a three-judge court. The Chief Judge would have designated two more judges—choosing among all the district and circuit judges in the circuit—to round out the panel. 28 U.S.C. § 2284(b)(1). Plaintiffs, by annex-

ing this unrelated claim to an existing complaint, would circumvent the entire process, and guarantee a hearing of their case before three particular judges.

Second, our adjudication of this case on the merits would signal a willingness on the part of this court to hear any and every Voting Rights Act case involving congressional districts that arises anywhere in Texas, at least until the original apportionment dispute is either resolved or mooted. We do not believe Congress or the Chief Judge, by authorizing the convening of this three-judge court, intended to create an on-going specialized review panel for all Voting Rights Act claims in this state which involve congressional districts, or that they intended to impose such an additional burden upon the already overburdened docket of the Eastern District of Texas.

For all the above reasons, it is concluded that venue is improper for this claim, which arises outside the Eastern District of Texas.[4]

Finally, it is noted that, even if venue were proper, or if the venue objection had been waived, this court would have discre-

**4.** The venue objection was raised by the Republican Party, an existing party to this dispute, and by candidate Gramm, through his attorney. All of the candidates in the special election were invited to make appearances at the preliminary injunction hearing as *amici curiae,* and three of them—Philip Gramm, Dan Kubiak, and John Henry Faulk—were, in fact, represented. Counsel for the defendant Texas state officials endeavored to waive the venue objection, contending that he had power to do so because his clients were the only "real parties in interest". It was his rationale that the Republican Party had only been made a party in the original complaint, for the reason that plaintiffs had sought to enjoin the use of the S.B. 1 districts in the *primary* as well as the general elections (*cf., Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); *Nixon v. Herndon,* 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed.2d 759 (1927)); and since the special election here challenged will be conducted solely by the state, and not by the political parties, it follows that the Texas state officials are the only real parties in interest.

We reject this argument. First of all, the term "real party in interest" refers specifically to a showing that only a plaintiff or another party asserting a claim must make. Fed.R. Civ.P. 17(a). *See generally,* 6 C. Wright and A. Miller, *supra,* § 1543 at 645–646. It appears

that any defendant properly joined, if not any defendant at all, should have standing to raise a venue objection, since any defendant may be inconvenienced or prejudiced by an improper venue selection. Both the Republican Party, which is already a party, and former Representative Gramm, who is not, meet the tests of joinder and intervention set forth in Rules 19 and 24(a), since they each have "an interest relating to the subject of the action and [are] so situated that the disposition of the action in [their] absence may ... as a practical matter impair or impede [their] ability to protect that interest." Fed.R.Civ.P. 19; *see* Fed.R.Civ.P. 24(a) (virtually identical language). The practical need for the Republican Party's presence in this case is especially exigent, because it can cogently be argued that the defendant Texas officials will not "adequately represent" the Republican Party's interests. *See* Fed.R.Civ.P. 24(a). All of the defendant Texas officials are members of the Democratic Party, as is the Attorney General of Texas, who is acting as counsel for those officials. We think the Republican Party is a proper party here, in defending the proclamation of the ousted Republican governor, a proclamation that arguably enhances the chances of Gramm's election as a Republican.

tion in granting leave to file a supplemental complaint and in granting leave to add parties plaintiff.[5] Fed.R.Civ.P. 15(a) and 15(d). The same considerations that counseled against exercising pendent venue counsel denial of each of those motions.

For all of the foregoing reasons, it is

ORDERED that plaintiffs' motions for leave to file a supplemental complaint and for leave to add parties plaintiff shall be, and they are hereby, DENIED.

See also, D.C., 546 F.Supp. 158.

---

5. The motion for leave to add parties seems to be necessary, in order to give plaintiffs standing to contest the District No. 6 election. Only one member of the group of plaintiff interve-

nors in the original case actually lived in District No. 6, and plaintiffs' counsel did not appear to be in contact with that plaintiff. This case has not been certified as a class action.