REVISED – March 17, 2000

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-60747
_____

PRESTAGE FARMS, INC.,

Plaintiff-Appellee,

versus

BOARD OF SUPERVISORS OF NOXUBEE COUNTY, MISSISSIPPI, et al.,

Defendants,

BOARD OF SUPERVISORS OF MONROE COUNTY,
MISSISSIPPI,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Mississippi
_____

March 10, 2000

Before POLITZ, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant, Board of Supervisors of Monroe County, Mississippi ("Monroe County"), challenges the issuance of a preliminary injunction against a Monroe County ordinance regulating new and expanding swine farming in Monroe County[1]. However, Prestage failed to show any concrete effect the ordinance has on its ability to purchase hogs from Monroe County farmers. Prestage can continue to buy hogs from Hi-Lo, the farmer with whom it has a contract to purchase hogs at existing production levels, and the ordinance does not affect this farmer's current

_____

[1]The Monroe County ordinance restricts the location of new or expanding swine farms in the County by requiring various "buffer zones" between such farms and a Monroe County municipality, residential dwellings, local waterways, and adjacent property lines.

1

operations and production. Prestage produced no proof that, if the ordinance is stricken, Hi-Lo or any other farmer would sell Prestage any additional hogs their farms may produce. Because Prestage has failed to show the requisite injury, it has no standing to challenge the ordinance.

**I**.

Plaintiff-Appellee Prestage Farms, Inc. ("Prestage") is a large hog producer with operations in numerous southern states. Since 1992, Prestage had a contract with Bryan Foods, Inc. ("Bryan Foods"), a large meat processor, to provide a set number of hogs per week. In order to fulfill its agreement with Bryan Foods, Prestage contracted with smaller independent farmers throughout Mississippi to raise the necessary hogs. These independent farmers are responsible for the land, farm buildings, applicable permits, and labor. In return, Prestage provides the livestock, feed, disinfectants, support personnel, expertise, and any necessary medication. Prestage has an existing contract to purchase hogs at current production levels with one independent Monroe County farmer, Hi-Lo Farms ("Hi-Lo"). Prestage claims that it has informal plans to purchase hogs from a yet to be established facility proposed by Ray and Sandra Gallop (the "Gallops"). Both Hi-Lo and the Gallops have filed separate applications with the State of Mississippi Department of Environmental Quality to expand or establish their hog farming operations in Monroe County, and both would be prevented from such development by enforcement of the challenged Monroe County ordinance.

Prestage filed suit in the district court against Monroe County and five other Mississippi counties that had similar ordinances, seeking declaration that the ordinances are invalid and requesting a preliminary injunction enjoining enforcement of the ordinance. Prior to a scheduled hearing on the motion for preliminary injunction, Prestage settled with three of these counties. Following a hearing on the motion, the district court rendered an opinion and order granting the preliminary injunction and enjoining Monroe and two other counties from enforcing these ordinances. Before the required briefing deadline for this appeal, Prestage settled its claims against two of the three remaining defendants, leaving Monroe County as the sole party appealing the district court's order.

**II**.

2

Monroe County's first argument is that the district court lacked standing and, therefore, had no jurisdiction to consider the complaint against it. Prestage acknowledges that it engaged in no hog farming in Monroe County and owned no property in the county.

Nevertheless, Prestage points to the inability of Hi-Lo to expand its business and the inability of the Gallops to start a new swine facility in Monroe County. According to Prestage, this prevents it from purchasing the hogs these farmers would have produced if their plans were approved. Critically, however, Prestage produced no evidence that if the ordinance is stricken and Hi-Lo and the Gallups get their permits and decide to produce hogs pursuant to these permits, these farmers will sell their hogs to Prestage. Prestage introduced no contract with either grower, letter of intent, or other evidence that these growers will sell their prospective hog production to Prestage.

Article III of the Constitution requires the plaintiff to demonstrate standing before the court can decide the merits of a dispute. To make this showing, the plaintiff must establish an "injury in fact," a requirement that assures that the court will not pass upon abstract problems but will adjudicate only concrete disputes between adversaries.[2]

In *Lujan v. Defenders of Wildlife*, the Supreme Court stated that threatened future injury must be "real and immediate; not conjectural or hypothetical" in order to demonstrate Article III standing.[3] While the risk of injury may be founded on a likely and credible chain of events[4], the injury must be "certainly impending."[5] Federal courts consistently deny standing when claimed anticipated injury has not been shown to be more than uncertain potentiality.[6] In *Texas v. United States*, a recent

---

[2]See F.E.C. Comm'n v. Akins, 524 U.S. 11, 20, 118 S. Ct. 1777, 1784 (1998) (citing Justice Frankfurter's dissent in Coleman v. Miller, 307 U.S. 433, 460, 59 S. Ct. 972, 985(1939)).

[3]504 U.S. at 559-61, 112 S. Ct. at 2136; see also, Friends of the Earth, Inc. v. Laidlaw Envtl. Serv's, Inc., 120 S. Ct. 693, 704 (2000); A.C.O.R.N. v. Fowler, 178 F.3d 350, (5th Cir. 1999).

[4]See Idaho Conservation League v. Mumma, 956 F.2d 1508, 1515 (9th Cir. 1992); Wilderness Soc'y v. Griles, 824 F.2d 4, 12 (D.C. Cir. 1987).

[5]Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S. Ct. 1717 (1990).

[6]See e.g., Amer. Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmer's Mutual Casualty Insurance Co., 280 F.2d 453, 461 (5th Cir. 1960) ("It is not the function of a United States

3

decision invoking the closely related ripeness doctrine[7], the Supreme Court applied similar reasoning to find that Texas had not presented a justiciable claim because the proposed harm depended on the occurrence of numerous uncertain future events.[8] Seeking preenforcement review of a new state statute, Texas sued for a declaration that § 5 of the Voting Rights Act of 1965 did not apply to a law permitting the state government to appoint "masters" or "management teams" as two of ten possible sanctions for failure of local school districts to meet state-mandated educational achievement levels.[9] After citing the string of contingencies that must occur before a justiciable claim would arise[10], the Court held that because any judicially redressable harm was "contingent on a number of factors," Texas's claim was "too speculative" and "not fit for adjudication."[11]

Likewise, Prestage's injury from this ordinance depends on the occurrence of a number of uncertain events: (1) that Hi-Lo and the Gallops will expand or develop their capacity if authorized by the county; (2) that this new capacity will result in a successful harvest of additional hogs; (3) that these independent farmers will sell their hogs to Prestage; and (4) that these sales will be necessary to fulfill contractual obligations to Bryan Foods. We conclude that Prestage's future injury under these circumstances is too conjectural and hypothetical to provide Article III standing.

---

District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never come to pass.").

[7]The justiciability doctrines of ripeness and standing often intersect because the question of whether a plaintiff has suffered an adequate harm is integral to both. Erwin Chemerinsky, Federal Jurisdiction § 2.4, at 114-15 (2d ed. 1994).

[8]523 U.S. 296, 118 S. Ct. 1257 (1998).

[9]Id.

[10]523 U.S. at 300, 118 S. Ct. at 1259-60 ("First, a school district must fall below the state standards. Then, pursuant to state policy, the Commissioner must try first 'the imposition of sanctions which do not include the appointment of a master or management team.' . . . It is only if these less intrusive options fail that a Commissioner may appoint a master or management team, [citation omitted], and even then, only 'to the extent the Commissioner determines necessary,' [citation omitted]. Texas has not pointed to any particular school district in which the application of [the state statute] is currently foreseen or even likely.").

[11]523 U.S. at 300-01, 118 S. Ct. at 1259-60.

4

**III**.

For the reasons discussed above, the preliminary injunction issued by the district court is vacated and Appellee's suit is dismissed for lack of jurisdiction.

VACATED and DISMISSED.