**J.B. MAYFIELD, Roy Stanley Phylis Cottle, Plaintiffs,**

**v.**

**State of TEXAS; Rick Perry, Governor of the State of Texas; Bill Ratliff, in his official capacity as Lieutenant Governor; Pete Laney, in his official capacity as Speaker of the Texas House of Representatives; Henry Cuellar, in his official capacity as Secretary of State for the State of Texas; Molly Beth Malcolm, in her official capacity as Chairperson of the Texas Democratic Party; Susan Weddington, in her official capacity as Chairperson of the Texas Republican Party, Defendants.**

No. 2:00–CV–268.

United States District Court,
E.D. Texas,
Marshall Division.

April 26, 2001.

Edward Bradbury Cloutman, III, Law Offices of Ed Cloutman, Dallas, TX, Franklin W Jones, Jr, Jones & Jones, Marshall, TX, for J B Mayfield, Roy Stanley, Phylis Cottle, plaintiffs.

William Andrew Taylor, Attorney General Office, Austin, TX, Robert S Bickerstaff, Bickerstaff Heath et al, Austin, TX, for State of Texas, Rick Perry, Secretary of State of Texas.

Richard Edwin Gray, III, Gray & Becker, Austin, TX, for Pete Laney.

Robert M Long, Houdyshell & Long LLP, Austin, TX, for Molly Beth Malcolm.

Lee R Sandoloski, Jonathan D Pauerstein, Arter & Hadden, San Antonio, TX, for Susan Weddington.

Edgar Leon Carter, Barbara Kay Salyers, Case Carter Salyers & Henry PC, Dallas, TX, for Bill Ratliff.

## MEMORANDUM AND ORDER [1]

PER CURIAM.

Defendants the State of Texas, Rick Perry, Bill Ratliff, Pete Laney, Henry Cuellar, and Susan Weddington (collectively referred to hereinafter as the "Defendants") have moved to dismiss this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] (Docket Entry Nos. 4, 5, 6, 7). Specific to this Memorandum and Order, the Defendants contend that the Plaintiffs lack standing to bring their claims and that the Plaintiffs' claims are not ripe. For the following reasons, the Defendants' motions are GRANTED.

## I. BACKGROUND

The Plaintiffs in this case are registered voters who live in Texas's Fourth Congressional District. On December 28, 2000, the Plaintiffs filed their Original Complaint (Docket Entry No. 1) alleging that the existing congressional districts in Texas are malapportioned in violation of Article I, Section 2 of the U.S. Constitution because they do not take into account the population shifts revealed by the 2000 Census. Specifically, the Plaintiffs charge that the existing districts dilute their voting strength and, therefore, violate their constitutional right to "one person, one vote." The Plaintiffs also allege violations of the Equal Protection Clause, the Privileges and Immunities Clause, and the Fifteenth Amendment, as well as deprivation of their rights under 42 U.S.C. § 1983.

Arguing that "[t]here is some reason to believe that the State of Texas will deadlock over congressional redistricting and fail to enact a new plan in the 2000[sic] legislative session," the Plaintiffs ask this court to (1) declare the existing districts invalid, (2) enjoin state authorities from implementing the current congressional districting plan in future primary and general elections, (3) set a deadline for state authorities to create and implement a new congressional districting plan, and (4) create and implement our own congressional districting plan should the state authorities fail to implement a plan before the court-imposed deadline.

The Defendants have moved to dismiss this suit for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing, *inter alia*, that the Plaintiffs lack standing to bring their claims and that the Plaintiffs' claims are not ripe. The Defendants contend that the Plaintiffs' malapportionment claim does not arise until, at the very earliest, the block-by-block census data has been released to the Texas Legislature,[3] and the Texas Legislature has been given an opportunity to act on that information. The Defendants maintain that the Plaintiffs' assertion that the Texas Legislature may not create a new districting plan is "pure speculation." The Defendants point to the fact that the Texas Legislature is in session until May 28, 2001, and still has ample opportunity to confect a new redistricting plan.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a district court's subject matter jurisdiction. In evaluating

---

1. The three-judge court was convened pursuant to 28 U.S.C. § 2284 by order of March 28, 2001.

2. Defendant Molly Beth Malcolm did not file a motion to dismiss, but filed instead a motion to stay the proceeding. (Docket Entry No. 8).

3. The Texas Legislature confirmed receipt of this block-by-block data from the Bureau on the Census on March 12, 2001.

a motion to dismiss, this court will take as true all of the complaint's uncontroverted factual allegations. *See John Corp. v. City of Houston,* ·214 F.3d 573, 576 (5th Cir. 2000). A district court properly grants a motion to dismiss for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *See id.; Home Builders Ass'n, Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998). The Plaintiffs bear the burden of demonstrating that subject matter jurisdiction exists. *See Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir. 1995).

### III. JUSTICIABILITY ANALYSIS

As noted above, the Defendants challenge the justiciability of this case on both standing and ripeness grounds. We turn first to standing and to the Plaintiffs' request that we declare the existing districts unconstitutional.[4] We find that the Plaintiffs do not have standing to raise this claim. To demonstrate standing, the Plaintiffs have the burden of "establish[ing] an 'injury in fact,' a requirement that assures that the court will not pass upon abstract problems but will adjudicate only concrete disputes between adversaries." *Prestage Farms, Inc. v. Bd. of Supervisors,* 205 F.3d 265, 267 (5th Cir.2000). In *Lujan v. Defenders of Wildlife,* the Supreme Court stated that, in order to have standing to assert a claim, a plaintiff must have suffered· a concrete and imminent invasion of a legally protected interest that is neither conjectural nor hypothetical. *See* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■. "Federal courts consistently deny standing when claimed anticipated injury has not been shown to be more than uncertain potentiality." *Prestage Farms, Inc.,* 205 F.3d at 268. In this case, there is no threat that an election will be held with the current districting scheme in place, and there is no reason to believe at this time that the Texas Legislature will fail to correct any malapportionment before the next election process begins. Accordingly, we believe that any alleged injury is nothing more than an "uncertain potentiality" and, therefore, is insufficient to satisfy the injury-in-fact requirement of standing.

■ We turn next to ripeness and the Plaintiffs' request that this court set a deadline for state authorities to create and implement a new congressional districting plan and, if necessary, create and implement our own plan. Ripeness is "peculiarly a question of timing." *Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406

4. During the hearing on the Defendants' motions to dismiss, when asked how the retention by the district court in *Vera v. Bush,* 933 F.Supp. 1341 (S.D.Tex.1996), of jurisdiction over "the state's redistricting of its congressional districts," *Vera v. Bush,* Second Interim Remedial Order (Sept. 15, 1997), affected this case, the Plaintiffs appeared to concede that they were not challenging the constitutionality of the existing districts, but were instead contending that, under federal law, they were entitled to a new redistricting plan—one with congressional districts that do not dilute unconstitutionally their voting strength. Also at the hearing on the motions to dismiss, the State, Perry, and Cuellar stated that, in their view, the Vera court does not have jurisdiction over challenges to any plan emerging from the 2000 Census. *Cf. Seamon v. Upham,* 563 F.Supp. 396, 398 (E.D.Tex.1983) (refusing to "believe that Congress or the Chief Judge, by authorizing the convening of [a] three-judge court, intended to create an on-going specialized review panel for all Voting Rights Act claims in this state which involve congressional districts").

(1998) (internal quotations omitted) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). As the Supreme Court stated in *Abbott Laboratories v. Gardner* in the context of reviewing an administrative determination, the purpose of the ripeness inquiry is to prevent courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

■ The Supreme Court has recognized that the "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); *see also Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n. 7, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997). Accordingly, even if a constitutional showing of ripeness were to be made, this court would also be required to address prudential concerns of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court decision." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotations omitted) (quoting *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507). These prudential concerns ensure that shifting hypothetical circumstances do not make resolution of the legal issues unnecessary.

■ Article III limitations on judicial power, and prudential reasons as well, compel us to conclude that the Plaintiffs' claims are not ripe. As the Defendants have argued from the outset, the Texas Legislature has not been given the opportunity to act. This suit was filed on the day the 2000 Census figures were released. The Plaintiffs filed suit, asking this court to set a deadline for State authorities to act, even before the Texas Legislature convened on January 9, 2001 to begin the redistricting process. Indeed, it appears that the Texas Legislature was unable to act until it received from the Bureau of the Census the detailed block-by-block census analysis necessary for it to begin redistricting. The Legislature received this information on March 12, 2001, and is currently engaged in formulating a redistricting plan based on the new figures. Because we find that the State of Texas has not been allowed to respond to the new census figures and because there is no reason to believe that the Texas Legislature will fail to do so, we conclude that resolution of this case "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300, 118 S.Ct. 1257; *see also Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir.2000) (requiring an "actual controversy" in which "a substantial controversy exists of sufficient immediacy and reality ... between parties having adverse legal interests" (internal quotations and citations omitted)).

The Plaintiffs assert that the Supreme Court decision of *Growe v. Emison* "instructs" or "requires" this court to find the Plaintiffs' claims ripe and to invoke jurisdiction over this case.[5] *See* 507 U.S. 25,

---

**5.** In *Growe*, a group of Minnesota voters filed a state-court action in January 1991, claiming that the state's congressional and legislative districts were malapportioned after the 1990

Census. In March 1991, another group of plaintiffs brought suit in federal court. While these actions were proceeding, the Minnesota Legislature was in the process of designing

113 S.Ct. 1075, 122 L.Ed.2d 388 (1993). We disagree with the Plaintiffs' contention that *Growe* affirmatively creates a "framework" for this court to follow when confronted with what has apparently come to be known as a "placeholder suit" [6] such as the one before us. Candidly, *Growe* instructs little about the justiciability of placeholder suits. The Supreme Court did not address either standing or ripeness, acknowledging that "[t]he parties do not dispute that both [federal and state] courts had jurisdiction to consider the complaints before them." *Id.* at 32, 113 S.Ct. 1075. The Plaintiffs argue that the Court would have been compelled to, and we should presume did, determine whether the lower court in *Growe* had jurisdiction to entertain the suit and that we should therefore read from the Court's silence an implicit conclusion that jurisdiction exists in a case such as this. We disagree.

First, *Growe* encompassed two consolidated suits, the second of which presented no arguable standing or ripeness issue. The first suit (which challenged the existing districting plans) was brought on March 18, 1991, admittedly before the Minnesota Legislature had an opportunity to respond to the 1990 Census. However, the second suit, which was consolidated with the first, was brought on August 9, 1991, well after the Minnesota Legislature adopted a new redistricting plan and after the Minnesota governor vetoed the legislation. In contrast to the first suit, the second suit challenged the Legislature's new redistricting plan. This factual scenario distinguishes *Growe* from the Plaintiffs' suit and may well explain the silence of both the parties and the Court on standing and ripeness.[7]

■ Most significantly, we think it inconsistent with the precepts of *Growe* to say that the decision is an endorsement of a federal court's invocation of jurisdiction in a suit brought with no election pending and before the state's legislature has even had an opportunity to act. Instead, *Growe* appears to teach us that, first and foremost, it is the state's responsibility to apportion its own federal congressional and state legislative districts. *See* 507 U.S. at 34, 113 S.Ct. 1075; *see also Chapman v. Meier,* 420 U.S. 1, 27, 95 S.Ct. 751, 42 L.Ed.2d 766 (1975). "Absent evidence that [state authorities] will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe,* 507 U.S. at 34, 113 S.Ct. 1075.

new districts. After the Minnesota Legislature devised a state legislative redistricting bill and after the Minnesota governor vetoed that legislation, in August 1991, a second federal suit was brought. The two federal suits were then consolidated.

6. *See* Note, *Federal Court Involvement in Redistricting Litigation,* 114 HARV. L. REV. 878, 879 (2001) ("When the census reveals existing districts to be unconstitutional, political parties that think their interests will be better served in courts than in the traditional redistricting body can immediately sue to have the existing district declared unconstitutional. These lawsuits operate as 'placeholder' suits[.]" (footnotes omitted)).

7. The Plaintiffs argue that the Court could not have ruled on the Voting Rights Act, 42 U.S.C. § 1973, claims that were brought solely by the plaintiffs in the first suit if the district court lacked subject matter jurisdiction over the first suit. As we read the Court's opinion in *Growe,* however, the Court addressed a Voting Rights Act issue with respect to the plan adopted by the state court that, as the Court explicitly noted, was raised by no party, but instead was the predicate for the district court's judgment. *See* 507 U.S. at 39, 113 S.Ct. 1075.

 In addition to our conclusion that this case lacks Article III ripeness, we find that prudential considerations of "fitness of the issues for judicial decision" and "hardship to the parties of withholding court consideration" also require dismissal of the Plaintiffs' claims. *See Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507; *Orix Credit Alliance, Inc.,* 212 F.3d at 895–96; *Jobs, Training & Servs., Inc. v. E. Tex. Council of Gov'ts,* 50 F.3d 1318, 1335 (5th Cir.1995). Because at this time there is no indication that the Texas Legislature will fail to enact a valid redistricting plan, we conclude that the Plaintiffs' claims are not fit for judicial decision. *Cf. Texas,* 523 U.S. at 301, 118 S.Ct. 1257 ("We do not have sufficient confidence in our powers of imagination to affirm such a negative.... Here, as is often true, '[d]etermination of the scope ... of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.'" (second and third alterations in original) (quoting *Longshoremen's v. Boyd,* 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 650 (1954))).

Furthermore, there seems to be no hardship to the Plaintiffs if this court dismisses this case without prejudice. The dilution of the Plaintiffs' voting power in an election may not ever be seriously threatened. If, after the Texas Legislature acts or fails to act, the Plaintiffs still believe their voting rights are being impinged, they may bring suit at the appropriate time. Indeed, the relief that the Plaintiffs seek illustrates the lack of hardship: they request that this court invoke jurisdiction, set a deadline, and wait.

For the foregoing reasons, the Defendants' motions to dismiss (Docket Entry Nos. 4, 5, 6, 7) are GRANTED, and this case is DISMISSED without prejudice for lack of standing and ripeness. Malcolm's motion to stay proceedings (Docket Entry No. 8) is DISMISSED as moot.