

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

April 23, 2003

The Honorable Joe Crabb
Chair, House Committee on Redistricting
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0063

Re: Whether the Texas Legislature is required to undertake congressional redistricting for the electoral period 2003-2010   (RQ-0017-GA)

Dear Representative Crabb:

You ask about the Texas Legislature's legal rights and responsibilities in connection with congressional redistricting following the 2000 census.[1]

The Seventy-seventh Legislature failed to enact a redistricting plan for the United States House of Representatives, and a three-judge federal court therefore created a plan used for the 2002 general election. *See Balderas v. Texas*, No. 6:01-CV-158, slip op. (E.D. Tex. Nov. 14, 2002) (per curiam), *aff'd mem.*, 122 S. Ct. 2583 (2002).[2]  You first ask whether the map drawn by the three-judge panel was "a de novo map for the 2002 elections,"[3] because the legislature had not acted. Request Letter, *supra* note 1.   You also ask whether the Texas Legislature has a "mandated responsibility to enact a permanent map for the electoral period 2003 through 2010." *Id.*

The United States Constitution provides that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State," U.S. CONST. amend. XIV, § 2, as determined by the decennial census, *id.* art. I, § 2, cl. 3.[4]  The states have the primary duty and responsibility to redraw their congressional districts in

---

[1]*See* Letter from Honorable Joe Crabb, Chair, House Committee on Redistricting, to Honorable Greg Abbott, Texas Attorney General (Feb. 11, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

[2]The opinion and judgment in *Balderas v. Texas* can be found at http://gis1.tlc.state.tx.us/static/pdf/opinion.pdf and http://gis1.tlc.state.tx.us/static/pdf/judgment.pdf respectively.

[3]In this context, "de novo" means "new." *See* IV OXFORD ENGLISH DICTIONARY 280 (2d ed. 1989).

[4]Article I, section 2, clause 3 provides that "Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union," according to an apportionment method that has been amended by the Fourteenth Amendment. It also states that "The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as

(continued...)

compliance with the United States Constitution. *See Growe v. Emison*, 507 U.S. 25, 26 (1993). Article I, section 4 states explicitly that "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof. . . ." U.S. CONST. art. I, § 4. The Texas Legislature is vested with the authority to redistrict Texas congressional seats pursuant to article III, section 1 of the Texas Constitution, which provides generally that "The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'" TEX. CONST. art. III, § 1; *see also Perry v. Del Rio*, 67 S.W.3d 85, 91 (Tex. 2001).

The apportionment provisions of the United States Constitution require states to establish congressional districts substantially equal in population. *See Wesberry v. Sanders*, 376 U.S. 1, 8 (1964).[5] The state's population increase, reflected in the 2000 census, entitled Texas to two additional congressional seats and required the redrawing of the congressional districts that were based on outdated 1990 census data. *See Perry v. Del Rio*, 67 S.W.3d 85, 89 (Tex. 2001) (citing U.S. CONST. amend. XIV, § 2); *Perry v. Del Rio*, 66 S.W.3d 239, 242 (Tex. 2001). The Seventh-seventh Legislature adjourned, however, without adopting a congressional redistricting plan, and multiple lawsuits were filed in state and federal courts against the state, state officials, and political party officials challenging the constitutionality of existing congressional district boundaries and seeking declaratory and injunctive relief. *See, e.g., Mayfield v. Texas*, 206 F. Supp. 2d 820 (E.D. Tex. 2001) (dismissing case for plaintiff's lack of standing and lack of ripeness); *Perry v. Del Rio*, 66 S.W.3d at 242 (determining that Travis County district court had dominant jurisdiction over the various cases filed in Texas state courts). A Travis County district court issued a congressional redistricting plan, *see Del Rio v. Perry*, No. GN003665 (353d Dist. Ct., Travis County, Tex., Oct. 10, 2001), which the Texas Supreme Court held unconstitutional because the district court had adopted the plan without giving the parties an opportunity for a meaningful hearing. *See Perry v. Del Rio*, 67 S.W.3d at 93-94.

The United States Supreme Court has repeatedly stated that "legislative reapportionment is primarily a matter for legislative consideration and determination," *Reynolds v. Sims*, 377 U.S. 533, 586 (1964), because an elected legislature is the institution best positioned to reconcile conflicting goals in the people's name. Judicial relief in this area—when courts are forced to act in a pseudo-legislative capacity—should be exceedingly rare. When, however, a state legislature fails in its constitutional responsibility to redistrict timely according to federal constitutional requisites, and state courts subsequently fail to produce a valid plan, it throws to the federal courts "the unwelcome

_____

[4](...continued)
they shall by Law direct."

[5]The congressional redistricting plan must also be consistent with section 2 of the Federal Voting Rights Act, 42 U.S.C. § 1973 (2000), which protects the voting rights of minority groups. *See Bush v. Vera*, 517 U.S. 952, 976 (1996). In addition, section 5 of the Voting Rights Act requires Texas and certain other states to obtain prior federal approval, or preclearance, of a redistricting plan or other change in election procedures. *See* 42 U.S.C. § 1973c (2000); 28 C.F.R. §§ 51.1, 51.4 (2003); *id.* pt. 51, app. A voting change will be precleared if the state proves that the change does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. *See* 42 U.S.C. § 1973c (2000).

obligation of performing in the legislature's stead, while lacking the political authoritativeness that the legislature can bring to the task." *Connor v. Finch*, 431 U.S. 407, 415 (1977).

Mindful that federal courts "have a limited role in crafting a congressional redistricting plan where the State has failed to implement a plan," *Balderas*, No. 6:01-CV-158, slip op. at 4, the three-judge federal court in *Balderas* initially deferred to the State of Texas until the Texas Supreme Court on October 19, 2001 held the state district court plan unconstitutional, leaving the "federal courts with no choice but to proceed without the benefit of a state plan." *Id.; see also Perry v. Del Rio*, 67 S.W.3d at 95. "Starting with a blank map of Texas" and "without a state baseline plan in place," *Balderas*, No. 6:01-CV-158, slip op. at 4-5, the three-judge panel proceeded to trial, hearing testimony and taking evidence on various congressional redistricting plans submitted to it. *See id.* at 4. After reviewing the evidence and the parties' submissions, the court applied "neutral districting factors" and produced a congressional redistricting plan for Texas, identified as Plan 1151C.[6] *See id.* at 1, 5. (Final Judgment). In answer to your first question, the *Balderas* court drew a new Texas congressional map without having a baseline state plan to work from.

You also ask whether the court's plan applies only to the 2002 election cycle. On this point, the court's opinion and final judgment are silent. The court's final judgment states as follows:

> For the reasons expressed in the court's *per curiam* decision issued today, the court renders judgment declaring that the existing congressional districts in the State of Texas are unconstitutionally malapportioned and *adopting Plan 1151C as the remedial congressional redistricting plan for the State of Texas.*

*Balderas*, No. 6:01-CV-158, slip op. (Final Judgment) (emphasis added). The final judgment, by its literal terms, adopts Plan 1151C as the "remedial congressional redistricting plan for the State of Texas." *Id.* No language in *Balderas* mandates application of Plan 1151C through 2010, and no court order properly could bar a legislature from performing the legislative task of redrawing lines and enacting a constitutionally acceptable plan for future elections. Absent restraints imposed by state law, a state may redraw its congressional districts more often than every ten years. *See Reynolds*, 377 U.S. at 584; *French v. Boner*, 786 F. Supp. 1328 (M.D. Tenn.), *aff'd*, 963 F.2d 890 (6th Cir.), *cert. den. sub. nom. French v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 506 U.S. 954 (1992).

The United States Supreme Court has reminded parties on many occasions that "'reapportionment is primarily the duty and responsibility of the state through its legislature or other body, rather than of a federal court.'" *Growe*, 507 U.S. at 34 (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)); *see also, e.g., Branch v. Smith*, 123 S. Ct. 1429, 1444 (2003) ("it certainly remains preferable for the State's legislature to complete its constitutionally required redistricting"); *Perry v. Del Rio*, 67 S.W.3d at 91 ("The Legislature is the department constitutionally responsible for

---

[6]Plan 1151C, produced by the *Balderas* court, is available at the Legislative Council's Redistricting site: http://gis1.tlc.state.tx.us/static/pdf/C1151.pdf (Plan), and http://gis1.tlc.state.tx.us/static/pdf/planc01151m.pdf (Map).

apportioning the State into federal congressional legislative districts."). In 2002, the three-judge court in *Balderas* confronted the "unwelcome obligation of performing in the legislature's stead," *Connor*, 431 U.S. at 415, and was forced to draw a remedial plan because Texas' elected representatives failed to redistrict in accordance with the Constitution after the decennial census results were published, and no state court produced a valid plan after the legislature adjourned.

This federal court-drawn map, however, is only effective unless and until the Texas Legislature redraws it—that is, unless and until lawmakers "renew and continue efforts to fulfill their constitutional duties." *Colleton County Council v. McConnell*, 201 F. Supp. 2d 618, 630 (D.S.C. 2002). The court's admonition to the state's legislative branch in *Colleton Co.* is instructive:

> Like our predecessors faced with the task in the 1990s, we encourage the General Assembly and the Governor to work together to adopt any plan that could improve upon what we have done. They are, of course, in the best position to do so. We have done our best in the interim.

*Id.* at 668 (stressing the court's plan was merely a temporary, stop-gap remedy).

Likewise, Texas legislators are entirely free to replace the court-ordered plan in *Balderas* and, as the court urged in *McConnell*, "continue efforts to fulfill their constitutional duties" as elected representatives to enact a congressional redistricting plan that comports with section 5 of the Voting Rights Act. *Id.* at 630; *see also id.* at 671 (Order of Clarification).

You finally ask whether the Texas Legislature has a mandated responsibility to adopt a permanent map for the electoral period 2003 through 2010. We first note that the Texas Legislature plainly has authority to adopt a congressional redistricting plan based on the 2000 census. Nothing in the *Balderas* court's opinion or any other legal authority suggests that the Legislature would be foreclosed from exercising its constitutional responsibility to adopt a new congressional redistricting plan. *See Reynolds*, 377 U.S. at 584; *French*, 786 F. Supp. at 1331 n.4. The Texas Constitution provides as follows for redistricting the Senate and House of Representatives of the Texas Legislature:

> The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts, agreeable to the provisions of Sections 25[7] and 26[8] of this Article. In the event the Legislature shall

---

[7]Article III, section 25 of the Texas Constitution provides that "The State shall be divided into Senatorial Districts of contiguous territory, and each district shall be entitled to elect one Senator."

[8]Article III, section 26 of the Texas Constitution provides that "The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States census, by

(continued...)

> at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas . . . .

TEX. CONST. art. III, § 28.   The Texas Constitution is silent, however, as to establishing congressional districts.

The federal district court with jurisdiction over lawsuits involving the Texas congressional redistricting plan based on the 1990 census, *see Vera v. Bush,* 861 F. Supp. 1304 (S.D. Tex 1994), *aff'd, Bush v. Vera,* 517 U.S. 952 (1996), expressly recognized that the Texas Legislature had authority beyond its 1991 session to adopt a congressional redistricting plan.  In 1996, the court adopted an interim redistricting plan for the 1996 elections and directed the "Texas Legislature to draft congressional redistricting legislation for future elections by June 30, 1997." *See Vera v. Bush,* 933 F. Supp. at 1342, 1353.   When the legislature did not adopt congressional redistricting legislation in 1997, the federal court left the 1996 interim plan in place but recognized the possibility that the legislature might subsequently adopt its own plan. *See Vera v. Bush,* 980 F. Supp. at 252-53. *See also* Tex. Att'y Gen. Op. No. WW-118 (1957) (considering the validity of congressional redistricting legislation proposed for adoption in 1957).   Accordingly, the Texas Legislature has present authority to adopt a congressional redistricting plan based on the 2000 census. If it does so, Texas must obtain preclearance of the plan under the Voting Rights Act. *See* 42 U.S.C. § 1973c (2000).

While the United States Constitution entrusts states with the primary duty and responsibility to redraw their congressional districts, U.S. CONST. amend. XIV, § 2, and the Texas Constitution vests redistricting authority in the Texas Legislature, *see* TEX. CONST. art. III, §§ 1, 28, there exists no mechanism for enforcing this duty. *See generally* Tex. Att'y Gen. Op. No. O-6488 (1945), Tex. Att'y Gen. Op. (To Hon. H.B. Hill, July 21, 1921), 1920-1922 TEX. ATT'Y GEN. BIENNIAL REP. 188 (constitutional provisions requiring legislature to redistrict Texas House and Senate are mandatory in form, but impose no penalty for nonperformance nor provide any other enforcement mechanism).[9] The separation of powers doctrine protects the judiciary's ultimate authority to declare what the law is and what it requires, but the doctrine prevents judicial usurpation of duties that are committed by constitutional command to the legislative branch. *See* TEX. CONST. art. II, § 1 (providing for separation of powers and allocating sovereign powers among the coordinate, co-equal branches);[10]

---

[8](...continued)
the number of members of which the House is composed."

[9]In a pending case, a court may "direct" the legislature to adopt a redistricting plan within a specified time, and if the legislature fails to do so, the court may proceed to promulgate its own redistricting plan. *See Connor v. Williams,* 404 U.S. 549, 552 n.4 (1972); *Moss v. Burkhart,* 220 F. Supp. 149, 155 (W.D. Okla. 1963), *aff'd sub nom. Williams v. Moss,* 378 U.S. 558 (1964) (per curiam); *Reynolds,* 377 U.S. at 586-87 (approving the district court's action in ordering redistricting of the Alabama Legislature); *Terrazas v. Ramirez,* 829 S.W.2d 712, 718 (Tex. 1992).

[10]Article II, section 1 of the Texas Constitution provides that "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy,
(continued...)

*Denison v. State*, 61 S.W.2d 1017, 1019 (Tex. Civ. App.–Austin), *writ ref'd,* 61 S.W.2d 1022 (Tex. 1933) (per curiam) (courts lack authority to control the legislature's exercise of discretion). Consequently, while courts are empowered to resolve congressional redistricting controversies if the legislature fails to fulfill its duty, courts cannot mandate that the legislature summon political will or muster consensus. There is no judicial remedy to counter legislative noncompliance. A court can only devise and impose its own map and invite lawmakers, the people's elected representatives, to improve upon it. The difficulties of harmonizing competing legal doctrines, the expense of protracted litigation, and the inherent electoral calculations may entice states to defer to the courts for a definitive resolution, but these political challenges are precisely and properly entrusted to duly elected state legislators, not judges, and legislators should not flinch from their constitutional duty to enter the "political thicket" of redistricting. *Gaffney v. Cummings*, 412 U.S. 735, 750 (1973).

We conclude that the Texas Legislature has the authority to adopt a congressional redistricting plan for the electoral period 2003 through 2010, but it cannot be compelled to do so. Redistricting is an inherently and intensely political task for which courts are ill-suited, but if the Texas Legislature does not adopt a congressional redistricting plan, Plan 1151C drawn by the three-judge court in *Balderas v. Texas* will remain the congressional redistricting plan for Texas. *See Perry v. Del Rio*, 67 S.W.3d at 89 ("Because the Legislature never enacted a new plan, the federal court's remedial order . . . remained in effect for future elections.").

---

[10](...continued)
to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

### S U M M A R Y

The Texas Legislature is constitutionally responsible for apportioning the State into congressional districts. Neither the Texas Legislature nor a Texas state court, however, approved a valid plan for redrawing the state's congressional districts. The federal court in *Balderas v. Texas*, No. 6:01-CV-158, slip op. (E.D. Tex. Nov. 14, 2002), *aff'd mem.*, 122 S. Ct. 2583 (2002), created a new congressional redistricting plan for Texas without having a baseline state plan before it.

The United States Constitution entrusts the task of drawing congressional boundaries to the State, but there exists no mechanism to force compliance with this constitutional responsibility. The Texas Legislature has present authority to adopt a congressional redistricting plan based on the 2000 census. Unless and until the legislature adopts such a plan, the map drawn in 2002 by the three-judge court in *Balderas v. Texas* will continue to be the congressional redistricting plan for Texas.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee