OPINION
{¶ 1} Appellant, Jeffrey A. Smith, appeals the judgment of the Geauga County Court of Common Pleas, adopting the decision of the magistrate relating to the appraisal of the parties' former residence. We affirm.
 {¶ 2} On April 3, 2003, appellee, Louise M. Reiling, filed a complaint for divorce. At the time of trial, the parties reached an agreement regarding all aspects of the case with the exception of the fair market value of certain real estate. Located on the real estate at issue was the marital residence, an office, a store, and a greenhouse. The *Page 2 
parties agreed that appellee would retain the marital residence and the business located on the property.
 {¶ 3} Trial on the issue of the value of the property occurred on December 21, 2005. Each party called his and her own expert witness to testify regarding the value of the property. For appellee, appraiser Gerald Farrow testified. After setting forth the various methodologies used for arriving at an appraisal, Mr. Farrow concluded the property was worth $285,000. For appellant, appraiser Wayne Levering testified and concluded the property was worth $504,000.
 {¶ 4} On January 18, 2006, the magistrate concluded Mr. Farrow's appraisal of $285,000 was an appropriate measure of the property's value. Appellant filed objections to the magistrate's decision. However, on March 22, 2006, the trial court overruled appellant's objections and adopted the decision of the magistrate. Appellant now appeals and asserts two assignments of error for our review. His first assignment of error alleges:
 {¶ 5} "The trial court abused it's [sic] discretion when it failed to allow appellant to cross-examine an expert witness of the value of real estate."
 {¶ 6} Under his first assignment of error, appellant asserts he was deprived of his right to cross-examine appellee's appraiser on the value of the subject real estate. Specifically, appellant maintains he was prejudiced when the trial court precluded him from cross-examining Mr. Farrow as to whether his appraisal was influenced by his awareness of a separate appraisal. We disagree.
 {¶ 7} During cross-examination, appellant attempted to discredit Mr. Farrow by utilizing an alleged appraisal of the subject property prepared by one Andrew Lear. The *Page 3 
Lear appraisal allegedly assessed the value of the subject property at $333,000. Mr. Lear was not a witness at the hearing nor did he testify via affidavit or deposition. Nevertheless, counsel for appellant queried whether Mr. Farrow had knowledge of the Lear appraisal. Mr. Farrow indicated he did review an appraisal by Mr. Lear, but he neither recalled the specific appraisal amount nor the date of the appraisal itself. Mr. Farrow testified he did not know if the appraisal to which appellant's counsel was referring was the actual appraisal he had previously reviewed. When counsel persisted in questioning Mr. Farrow on the specifics of the Lear appraisal, counsel for appellee objected. The objection was sustained owing to Farrow's inability to identify whether the appraisal submitted was the appraisal he had reviewed. After sustaining the initial objection, the following exchange took place:
 {¶ 8} "[Appellant's counsel]: [Addressed to Mr. Farrow] And there was an amount in that appraisal when you saw it?
 {¶ 9} "[Appellee's counsel]: Well, objection, your Honor.
 {¶ 10} "THE MAGISTRATE: Sustained.
 {¶ 11} "[Appellee's counsel]: He's trying to back door this guy, and he's not going to come in and testify.
 {¶ 12} "[Appellant's counsel]: It isn't back dooring anything. It has to do with-
 {¶ 13} "THE MAGISTRATE: Okay. Next question. Next question.
 {¶ 14} "[Appellant's counsel]: — cross examination and credibility.
 {¶ 15} "THE MAGISTRATE: Well, then cross examine his testimony. I don't know that he can testify as to something he didn't prepare. *Page 4 
 {¶ 16} "[Appellant's counsel]: The question is whether or not someone might be influenced to some degree by another appraisal.
 {¶ 17} "THE MAGISTRATE: So ask him that question. Ask him that.
 {¶ 18} "* * *
 {¶ 19} "[Appellant's counsel]: Was the appraisal more than the appraisal that you made on this property?
 {¶ 20} "[Appellee's counsel]: Objection.
 {¶ 21} "THE MAGISTRATE: Overruled. Do you recall if the appraisal was more or less than the appraisal you made, whatever appraisal you saw?
 {¶ 22} "[Mr. Farrow]: I don't recall. He's got what he's trying to show me is a copy [sic]. I don't know."
 {¶ 23} The foregoing demonstrates the court permitted appellant's counsel to query whether Mr. Farrow's conclusions are influenced by independent appraisals. After Mr. Farrow reiterated his testimony that he had no recollection of the details of the Lear appraisal he had previously reviewed, counsel moved on without pursuing the matter further. The court did not preclude counsel from pursuing an answer to his question; counsel simply failed to ask the question. Counsel cannot assign as error on appeal alleged infirmities that are results of his or her own acts or omissions. In our view, appellant was given a full opportunity to conduct his cross-examination of Mr. Farrow.
 {¶ 24} Because appellant's argument touches upon the credibility of Mr. Farrow's testimony, we shall address the magistrate's decision to accept his appraisal over Mr. Levering's. An appellate court reviews a trial court's determination regarding the *Page 5 
valuation of property for an abuse of discretion. See, e.g., Boyles v.Boyles, 11th Dist. No. 2002-P-0097, 2003-Ohio-5351, at ¶ 38.
 {¶ 25} Mr. Farrow appraised the property at $285,000 and Mr. Levering appraised the property at $504,000. The large disparity between the competing appraisals was a result of the manner in which each expert framed his "highest and best use" analysis. According to testimony, a property's highest and best use is that which is legally allowable in light of local building regulations (zoning and the like), building sizes, lot size, utility availability, and demand for the property.
 {¶ 26} Here, the subject property is a four acre plot with a pre-existing residence, an office, a store, and a greenhouse. While the property is zoned commercial, testimony indicated there is little commercial development in the immediate vicinity. Further, the property does not have public water or sewer. While it could "tie into" the public water and sewer lines, such a project would require extensions of approximately 1000 feet. In light of these facts and after comparing the subject property to four other similar properties, Mr. Farrow arrived at his appraisal of $285, 000.
 {¶ 27} Mr. Levering based his $504,000 appraisal primarily upon the fact that the subject property is zoned commercial. He testified, however, that, in its current condition, it is "under-improved," i.e., the existing buildings drive down the value of the property. With that in mind, Mr. Levering premised his evaluation upon the value of the property as though it had no buildings on it. Mr. Levering's figures did not include the cost of razing the existing buildings and, in fact, Mr. Levering testified he could not quantify this cost. In arriving at his conclusion, he compared the subject property to *Page 6 
three similar sites in fully developed commercially zoned areas which had public sewer and water, none of which included a greenhouse business.
 {¶ 28} In Rodriguez v. Rodriguez (Apr. 13, 1990), 11th Dist. No. 89-G-1498, 1990 Ohio App. LEXIS 1448, this court observed "* * * conflicting testimony and the resolution of which [appraised] value to accept is a question of credibility of the witness that is to be determined by the trier of fact." Id. at *3. Each of the two appraisals placed different emphasis upon unique factual features of the subject property. "`It is unfortunate, but true, that experts, like the rest of mankind, may take a given set of facts and draw absolutely divergent conclusions therefrom. It thus becomes necessary for some tribunal to make [a] determination of the correctness of these opposite conclusions.`" Id. at *4, citing, Springfield Gas Co. v. Herman (1933),46 Ohio App. 309, 311.
 {¶ 29} Mr. Farrow's appraisal focused on the particular details of the property and the conditions in which it existed as is. That is, although the property was zoned commercial, there would not likely be a great commercial demand for the property given the existing buildings, the water/sewer issues, and the lack of substantial commercial/industrial development within the immediate area.
 {¶ 30} Testimony from the hearing suggests Mr. Levering appraised the property without considerable attention to the surrounding conditions. He had a primary and unwavering focus which was the property's zoning status. We do not dispute that the zoning issue is a significant aspect of the "highest and best use" analytic. However, it stands to reason that a fair estimation of a specific property's "highest and best use" must be derived from the condition of the property as it exists. Mr. Levering appraised the subject property as though it had no extant buildings and was situated in a *Page 7 
commercially desirable area. In actuality, the property is neither vacant nor does it exist in a commercial hub. Under the circumstances, we do not think the magistrate abused her discretion in accepting Mr. Farrow's appraisal over that of Mr. Levering.
 {¶ 31} Appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error asserts:
 {¶ 33} "The trial court erred to the prejudice of appellant when it failed to provide any security interest in the payment of property settlement."
 {¶ 34} Appellant asserts the trial court committed error by failing to sua sponte secure his property settlement installment payments. We disagree.
 {¶ 35} After accepting Mr. Farrow's appraisal, the magistrate divided the property pursuant to the appraisal amount and the parties' agreed-upon division of assets. In order to equalize the property division, the court ordered appellee to pay appellant $44,500 over a five year period at a rate of $8,950 per year plus 5% interest. The trial court did not furnish appellant with security on the settlement installment payments. Appellant now argues the trial court's omission was error.
 {¶ 36} Appellant's argument fails to allege how he has been harmed by the omission in question. Without some demonstration that the omission had some direct and immediate impact on him, appellant fails to assert a justiciable controversy. Burger Brewing Co. v. Liquor Control Comm.
(1973), 34 Ohio St.2d 93, 97-98; see, also, Eagle Fireworks, Inc. v.Ohio Dept. of Commerce, State Fire Marshal, 4th Dist. No. 03CA28,2004-Ohio-509, at ¶ 8. Generally, a claim is not ripe if the claim rests upon "future events that may not occur as anticipated, or may not occur at all." Texas v. United States (1998), 523 U.S. 296, 300. Where the issue of justiciability is not raised by the *Page 8 
parties, a court is obligated to do so sua sponte. Stewart v.Stewart (1999), 134 Ohio App.3d 556, 558.
 {¶ 37} Here, appellant's concerns are hypothetical and speculative. Any harm he may suffer depends upon a future, anticipated occurrence (appellee defaulting on her property settlement obligation) which may not happen at all. We therefore hold appellant's second assignment of error fails to raise a justiciable issue.
 {¶ 38} Appellant's second assignment of error is overruled.
 {¶ 39} For the reasons set forth above, appellant's assignments of error lack merit and the judgment entry of the Geauga County Court of Common Pleas is therefore affirmed.
 COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur. *Page 1