[Cite as *State v. Antol*, 2013-Ohio-5640.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 12 MA 211 |
| V. | ) | |
| | ) | OPINION |
| PAUL ANTOL, | ) | AND |
| | ) | JUDGMENT ENTRY |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Youngstown Municipal Court of Mahoning County, Ohio
Case No. 12TRC986Y

JUDGMENT: Dismissed

APPEARANCES:
For Plaintiff-Appellee            Dana Lantz
Prosecutor
Kathleen Thompson
Assistant Prosecutor
26 S. Phelps Street, 4th Floor
Youngstown, Ohio 44503

For Defendant-Appellant            Attorney James E. Lanzo
4126 Youngstown-Poland Road
Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 12, 2013

DONOFRIO, J.

{¶1}   Defendant-appellant Paul Antol Jr. (Antol) appeals the decision of the Youngstown Municipal Court suspending his driver's license for a period of six months following his conviction for operating a vehicle under the influence of alcohol or drugs.

{¶2}   On April 9, 2012, Antol was arrested for operating a vehicle under the influence of alcohol or drugs, a violation of R.C. 4511.19(A)(1)(a). This is Antol's third OVI offense since 1996.

{¶3}   At approximately 11 a.m. that morning, traveling on Interstate 680, Antol lost control of his vehicle and twice collided into the median, bouncing off each time into another driver's vehicle. Thereafter, Antol tried to convince the other driver to leave the scene of the accident, saying that he would "take care of it" because he "has money." When the other driver refused, Antol tried to convince the other driver to say that someone ran him off the road. Antol acknowledged that he was "in a mess" and was "going to get a DUI." The other driver relayed this information to the responding officer upon his arrival.

{¶4}   Thereafter, Antol told the officer that someone cut him off and, as a result, he lost control of his vehicle. The officer noticed an odor of alcohol and that Antol's speech was slurred, his eyes were glassy, and that he was pacing back and forth on the freeway. For Antol's safety, the officer placed Antol in his cruiser, at which point he noted that the odor of alcohol became more pronounced.

{¶5}   At this point, Antol refused medical treatment despite appearing to be in pain because he feared that the paramedics would take a blood test and that he would lose his job as a result.

{¶6}   The officer then advised Antol that he believed he was operating a vehicle under the influence of alcohol, and Antol maintained that he could not be tested as he could not "go through this again."

{¶7}   The officer did not administer a field sobriety test at the scene of the accident, but instead transported Antol to the police department for the administration of a urine test. After being advised of the consequences of being tested and/or

refusing the same, Antol refused the urine test and was arrested and charged with refusing a chemical test while having a previous OVI conviction within the past twenty years, a violation of R.C. 4511.19(A)(2); failure to control, a violation of Youngstown City Ordinance 331.34; and OVI, a violation of R.C. 4511.19(A)(1)(a). Additionally, as a result of his refusal, Antol's driver's license was automatically suspended pursuant to R.C. 4511.191(B)(1)(a) for a period of up to one year, as specified by R.C 4510.02(B)(3).

{¶8} On April 11, 2012, Antol pleaded not guilty to all three charges and waived his right to a speedy trial. The case then proceeded to discovery and other pretrial matters.

{¶9} As an employee of St. Elizabeth's Hospital, Antol requested and was granted occupational driving privileges pursuant to R.C. 4511.191(I)(4).

{¶10} On October 22, 2012, Antol withdrew his jury demand and pleaded no contest to the sole charge of operating a vehicle while under the influence of alcohol or drugs, a violation of R.C. 4511.19(A)(1)(a). As a result of this amended plea, the administrative license suspension (ALS) imposed by the registrar was terminated pursuant to R.C. 4511.191(B)(2). The State dismissed the charges of failure to control and OVI Refusal.

{¶11} Antol was found guilty of OVI and sentenced by the trial court to ten days of incarceration, a $500 fine plus court costs, $100 reimbursement of community control supervision, two years of intensive supervised probation, continuance of mental health counseling, and an operator's license suspension for a period of six months commencing on the date of sentencing.

{¶12} Thereafter, the trial court denied Antol's request to stay the execution of the sentence pending his appeal. Antol filed a separate motion in this Court requesting a partial stay of that portion of the sentence imposing a license suspension. This Court ordered a conditional stay to allow for a meaningful review prior to the completion of the terms of Antol's sentence, granting him occupational privileges only for the duration of the license suspension.

{¶13} Antol appeals the trial court's imposition of a six-month license suspension. Antol's sole assignment of error states:

> THE TRIAL COURT'S SENTENCING OF THE DEFENDANT-APPELLANT HEREIN IS VOID INASMUCH AS THE TRIAL COURT ERRED IN DIRECTING THAT HIS SUSPENSION UPON SENTENCING PURSUANT TO R.C.4511.19 AND 4510.02(A)(5) BEGIN UPON THE DATE OF SENTENCING THUS MAKING IT IMPOSSIBLE FOR THE REGISTRAR OF THE BUREAU OF MOTOR VEHICLES TO GRANT DEFENDANT-APPELLANT CREDIT FOR HIS PRETRIAL SUSPENSION TIME AS REQUIRED BY R.C. 4511.191(B)(2).

{¶14} Antol argues that Ohio's statutes regarding OVI mandate both that a pretrial suspension must be terminated upon conviction, and that any pretrial suspension time must be credited against any suspension imposed at sentencing. Antol contends that the trial court's order that his suspension last for six months beginning on the date of sentencing effectively precludes the BMV registrar from crediting his pretrial ALS against the court-ordered six month suspension.

{¶15} In support, Antol cites R.C. 4511.191(B)(2) (pertaining to *administrative* pretrial license suspensions of the type at issue here) which provides in part:

> The registrar shall terminate a suspension of the driver's or commercial driver's license * * * imposed pursuant to division (B)(1) of this section upon receipt of notice that the person has entered a plea of guilty to, or that the person has been convicted after entering a plea of no contest to, operating a vehicle in violation of section 4511.19 of the Revised Code or in violation of a municipal OVI ordinance, if the offense for which the conviction is had or the plea is entered arose from the same incident that lead to the suspension or denial.

The registrar shall credit against any judicial suspension of a person's driver's or commercial driver's license * * * imposed pursuant to section 4511.19 of the Revised Code, or pursuant to section 4510.07 of the Revised Code for a violation of a municipal OVI ordinance, any time during which the person serves a related suspension imposed pursuant to division (B)(1) of this section.

**{¶16}** For additional support, Antol cites R.C. 4511.196(C) (pertaining to *court-ordered* pretrial license suspensions) which provides:

Any time during which the person serves a suspension of the person's license, permit, or privilege that is imposed pursuant to division (B)(1) or (2) of this section shall be credited against any period of judicial suspension of the person's license, permit, or privilege that is imposed under division (G) of section 4511.19 of the Revised Code * * *.

**{¶17}** Antol acknowledges that of the two statutes he cites, only R.C. 4511.191(B)(2) is applicable here. He argues that that part of the trial court's sentence imposing a license suspension precludes the registrar from complying with R.C. 4511.191(B)(2), and is therefore void as not in accordance with statutorily mandated terms.

**{¶18}** In support, Antol cites to a line of post-release control cases that addressed, on narrow grounds, a trial court's non-compliance with post-release control statutes: *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864; *State v. Beasley*, 14 Ohio St.3d 74, 471 N.E.2d 774 (1984), *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000). These cases have since been superseded by a statute which establishes a remedial procedure for the correction of a sentence that failed to properly impose post-release control. *See generally State v. Singleton*, 124 Ohio St.3d 173, 920 N.E.2d 958 (2009).

**{¶19}** In the same vain, *State v. Bezak* (to which Antol also points for support) has been overruled by *State v. Fischer*. *Fischer* held that when a judge fails to impose statutorily mandated post-release control as part of a defendant's sentence, that part of the sentence was void and must be set aside. *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, overruled by *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26.

**{¶20}** While still good law, *Fischer* is not applicable here because R.C. 4511.191(B)(2), unlike the post-release control statutes at issue in *Fischer*, is not a sentencing mandate that statutorily binds the trial court. Rather, R.C. 4511.191(B)(2) requires that the *registrar* – not the trial court – credit the ALS against the judicial license suspension.

**{¶21}** In response, the State likewise acknowledges the applicability of R.C. 4511.191(B)(1)(2). However, the State highlights the language of the statute requiring that, specifically, it is the *registrar* (and not the trial court) that must credit the pretrial license suspension against the judicial suspension in order for such credit to be granted.

**{¶22}** Relying exclusively on the plain language of the statute, the State contends that the judicial suspension simply has no bearing on the registrar's statutory duties because by its terms, the statute does not require the trial court to perform any act at all or employ any special language in its sentencing in order for pretrial suspension credit to be given. The State asserts that Antol's position is misguided; the six month license suspension does not prevent the registrar from granting Antol pretrial credit. Accordingly, the State concludes, the sentence of the trial court should be affirmed.

**{¶23}** Our review of this matter reveals that Antol's argument in this appeal is not yet ripe for review. "Ripeness is 'peculiarly a question of timing.'" *State ex rel. Elyria Foundry Co. v. Indus. Comm. of Ohio*, 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1989), quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335 (1974). Therefore, in order "for a cause to be justiciable, there must exist a real

controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties." *State v. Stambaugh* (1987), 34 Ohio St.3d 34, 38, citing *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 97-98. Generally, a claim is not ripe if it depends on "future events that may not occur as anticipated, or may not occur at all." *Texas v. U.S.*, 523 U.S. 296, 300, 118 S.Ct. 1257 (1998).

**{¶24}** In this instance, because Antol's claim relates primarily to a right created by R.C. 4511.191(B)(2), a provision pertaining exclusively to the registrar, the claim must first be pursued through the registrar before it may become ripe for judicial review. *See Consolo v. Cleveland*, 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114, at ¶ 24 (holding that because the claims asserted relate to rights created by R.C. Chapter 4117, they must be pursued through the SERB before any judicial decision could be made). Antol has failed to refer to any place in the record indicating that he has undertaken the requisite procedural steps with the registrar to receive the ALS credit to which he is entitled. Nor has Antol demonstrated that such credit has not yet been granted. Thus, the record itself does not indicate that Antol has exhausted his administrative remedies by first pursuing his claim through the registrar.

**{¶25}** Additionally, the statutory scheme does not indicate in any way that the registrar is necessarily precluded from granting ALS credit where a Court suspension takes effect upon sentencing. *See generally* R.C. 4511.191(B)(2). Thus, amidst the silence of the record, principles of statutory interpretation are equally futile here; neither allow for a determination as to whether the registrar has granted ALS credit or as to whether Antol has even pursued his claim through the registrar.

**{¶26}** As no facts yet exist as to either Antol's or the registrar's action or inaction, it is presently too speculative as to whether the issue Antol raises needs, or ever will need, solving. *Texas v. U.S.*, 523 U.S. 296, 300, 118 S.Ct. 1257, 1260 (1998). Thus, the issue is not fit for this Court's consideration at present as it is not ripe for adjudication.

{¶27} Appeal dismissed. Costs taxed against Antol. Final order. Clerk to serve notice as provided by the Civil Rules.

Donofrio, J. concurs.
Vukovich, J. concurs.
DeGenaro, P.J. concurs.