*1317 N.R. SMITH, Circuit Judge,
dissenting:
The majority holds that federal courts have jurisdiction in this case based on precedent not applicable to its decision. For that reason, I must dissent.
Currently Guam is an unincorporated, organized territory of the United States.[1] Guam’s legislature found that the native inhabitants of Guam “have been subjected to incessant control by external colonial powers” and have never been afforded the right to self-determination as to their political relationship with the United States. 1 Guam Code Ann. §' 2101. Therefore, in 2004, Guam’s legislature enacted 1 Guam Code Ann. § 2110. It provides:
(a) The Guam Election Commission shall conduct a “Political Status Plebiscite”, at which the following question, which shall be printed in both English and Chamorro, shall be asked of the eligible voters:
In recognition of your right to self-determination, which of the following political status options do you favor? (Mark ONLY ONE):
1. Independence ()
2. Free Association with the United States of America ()
3. Statehood ().
Person eligible to vote shall include those persons designated as Native Inhabitants of Guam, as defined within this Chapter of the Guam Code Annotated, who are eighteen (18) years of age or older on the date of the “Political Status Plebiscite” and are registered voters on Guam.
The “Political Status Plebiscite” mandated in Subsection (a) of this Section shall be held on a date of the General Election at which seventy percent (70%) of the eligible voters, pursuant to this Chapter, have been registered as determined by the Guam Election Commission.
From the plain language of the statute, it is apparent that (1) the Guam legislature wants to gather the opinion of the Native Inhabitants of Guam regarding political status options; (2) to gather that opinion, the legislature scheduled a future plebiscite (poll) asking for an indication of what political status option is favored by such Native Inhabitants; and (3) the poll will not occur unless seventy percent of the Native Inhabitants of Guam register to be polled.
It is a fundamental principle that federal courts are courts of limited jurisdiction, limited to deciding “cases” and “controversies.” U.S. Const, art. Ill, § 2. The Supreme Court has repeatedly insisted that a case or controversy does not exist, unless the plaintiff shows that “he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.” City of L.A. v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal quotation marks omitted) (emphasis added). The Court admonished that the “injury or threat of injury must be both real and immediate, not conjectural or hypothetical.” Id. (internal quotation marks omitted) (emphasis added). “[Rjipeness is peculiarly a question of timing,” and ripeness is particularly at issue when a party seeks pre-enforcement review of a statute or *1318 regulation. Thomas v. Anchorage Equal Rights Com’n, 220 F.3d 1134, 1138 (9th Cir.2000). A “claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.” Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir.2009) (quoting Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)). The Supreme Court has consistently held that the ripeness doctrine aims “to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.” Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotation marks omitted). “Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy.” In re Coleman, 560 F.3d 1000, 1005 (9th Cir.2009) (internal quotation marks and citations omitted).
The district court found Davis’s alleged injury was not ripe. “Although a district court’s determination of federal subject matter jurisdiction is reviewed de novo, the district court’s factual findings on jurisdictional issues must be accepted unless clearly erroneous.” Stock W., Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir.1989) (internal citations omitted). The district court conducted a hearing and then made certain factual findings as to the ripeness of Davis’s claim. The district court found that: (1) there is no date currently set for the plebiscite; (2) “there is no discernible future election in sight”; (3) there is no “real threat of the election occurring any time soon”; (4) there is “little likelihood that the plebiscite will be scheduled any time in the near future”; (5) Davis’s own statements actually support the conclusion that the “plebiscite is not likely to occur any time soon, or if at all”; (6) Davis had not “successfully argued [or] shown that he is presently threatened with or has already suffered any irreparable damage or injury because he cannot register for a plebiscite that is more than likely not to occur.” The district court concluded that “until the plebiscite [Davis] seeks to register for is “certainly impending,” that Davis had no claim.
The district court’s factual findings are supported by the record. Davis does not challenge the findings as clearly erroneous. The majority does not hold the findings to be clearly erroneous. Applying the ripeness precedent to these findings, this controversy fails for ripeness. The inability to register for an opinion poll, that is not currently scheduléd and unlikely to ever occur, is not a matter of “sufficient ripeness to establish a concrete case or controversy.” Thomas, 473 U.S. at 579, 105 S.Ct. 3325. Whether the plebiscite occurs is contingent on a series of events that have not yet occurred and may never occur. Thus, at this point, there is not a “realistic danger” that the plebiscite will occur. Babbitt v. United Farm Workers Nat’l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Our court’s role is “neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies.” Thomas v. Anchorage Equal Rights Comm’n, 220 F.3d 1134, 1138 (9th Cir. 2000). Davis’s allegations of future injury are too speculative to be “of sufficient immediacy and reality” to satisfy the constitutional requirement of ripeness. See In re Coleman, 560 F.3d at 1005.[2] Thus, the *1319 matter is not ripe and our court has no jurisdiction.
In its decision, the majority instead concludes that Davis has standing to challenge the plebiscite, not based on voting rights cases, but based on one’s ability to seek Social Security benefits.[3] In fact, the majority cites no precedent suggesting that forbidding Davis from registering for this plebiscite implicates the voting rights protected under the Constitution. The Fifteenth Amendment only applies to an “election in which public issues are decided or public officials selected.” Terry v. Adams, 345 U.S. 461, 468, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (emphasis added). Davis does not allege that he is being denied the right to register for an election. Davis does not allege the plebiscite will select “candidates for public or party office.” See 52 U.S.C. § 10310(c). Davis does not allege the plebiscite will change Guam’s Constitution. Davis does not allege the plebiscite will enact, amend, or repeal any statute. Despite the language in the majority’s opinion to the contrary, Davis does not allege the plebiscite will change the rights of Guam’s citizens or that the plebiscite itself will change or decide Guam’s political status in relationship with the United States. Rather, the injury alleged by Davis is merely being denied the right to register to participate in an opinion poll that will likely never occur. Clearly, the inability to register for this opinion poll is not equivalent to being denied the right to register to vote in the type of vote contemplated and protected by the Constitution.
Even if prohibiting Davis from registering for the plebiscite were a violation of his voting rights, this case “involves too remote and abstract an inquiry for the proper exercise of the judicial function.” Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). The plebiscite is not currently scheduled and as the district court found, it is not likely to ever occur ! The condition precedent to even scheduling the opinion poll is obtaining the registration of seventy percent of the eligible voters. Failing to satisfy this requirement (an event that even Davis describes as a “mirage”), the poll will not take place. Yet, amazingly, the majority finds these circumstances present a case ripe for resolution.
The majority mistakenly suggests that Heckler v. Mathews, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984) would apply.[4] However, in Mathews, there was *1320 no question that Social Security pension benefits would be paid. There was no uncertainty as to application of the allegedly unconstitutional pension offset provision. Thus, there was no question the issue was ripe. Indeed, the Court was not asked to determine ripeness and the Court did not address ripeness. Rather, the issue before the Court was determining the plaintiffs standing. The Court was asked to answer the question of whether the plaintiffs standing was dependant on his ability to receive additional benefits if he prevailed. See Mathews, 465 U.S. at 735-38,104 S.Ct. 1387.
Thus, the majority’s conclusion that this case is ripe is without precedent and ignores the district court’s extensive factual findings as to ripeness. Can you imagine the hours the district court will now have to spend resolving Davis’s many alleged claims, including claims of alleged unequal treatment under the Fourteenth Amendment, -alleged stigmatizing harm under the Establishment Clause, alleged violations of the Voting Rights Act, even though this plebiscite will never occur?
Given the speculative and remote course of events that stands between Davis and his contemplated injury, this matter is not ripe for adjudication, and the district court correctly dismissed Davis’s complaint.

. Guam became an "organized” territory after Congress enacted the Guam Organic Act in 1950, which granted the people of Guam United States citizenship and established institutions of local government. Guam is "unincorporated,” because not all' provisions of the U.S. Constitution apply to the territory. DOI Dep't of Insular Aff., Report on the State of the Islands (1997), http://www.doi.gov/oia/ reports/Chapter-4-Guam.cfm (last visited Apr. 15, 2015).

. The Sixth Circuit appears to be the only Circuit that has directly addressed the question of when an alleged deprivation of voting rights is ripe. The court found the Constitution protects an individual's "fundamental right to vote not the right to register to vote.” *1319 Lawson v. Shelby Cnty., 211 F.3d 331, 336 (6th Cir.2000) (emphasis added). Accordingly, the court found that the cause of action accrued on election day, "when [the plaintiffs] presented themselves at their polling station and were refused the right to vote,” not when they were "notified that their registrations had been rejected” for refusing to provide social security numbers. Id. Unlike this case, the "vote” at issue in Lawson involved an actual election.

. I note the majority also cites Batson v. Kentucky, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) to support its position. Op. 1315. However, in Batson, the United States Supreme Court held that a prosecutor’s use of peremptory challenges based on race violates the Equal Protection Clause of the Fourteenth Amendment. Batson, 476 U.S. at 85-86, 106 S.Ct. 1712. The Court’s focus was protecting the defendant’s constitutional right to a trial by jury. Id. The Court found that the jury must be "indifferently chosen to secure the defendant's right under the Fourteenth Amendment.” Id. at 87, 106 S.Ct. 1712 (internal quotation marks omitted) (emphasis added). It is difficult to understand how the majority extrapolated the holding in this case to its conclusion that Davis’s right to register for the plebiscite “is not unlike the right to participate in jury service, which may not be denied on a constitutionally unequal basis.” Op. 1315.

. The plaintiff in Mathews claimed that he was subjected to unequal treatment as to Social Security benefits "solely because of his *1320 gender." Mathews, 465 U.S. at 738, 104 S.Ct. 1387. Specifically, the plaintiff alleged that “as a nondependent man, he receiv[ed] fewer benefits than he would if he were a similarly situated woman." Id. The Court focused on two factors when determining the plaintiff had standing (1) his injury was concrete as "there was no doubt about the direct causal relationship between the government’s alleged deprivation of appellee’s right to equal protection and the personal injury appellee has suffered — denial of Social Security benefits solely on the basis of his gender”; (2) that he was denied equal treatment solely because of gender (a protected class). Id. at 739-40 & n. 9, 104 S.Ct. 1387. The court concluded that the plaintiff’s standing did not depend on his ability to obtain increased Social Security benefits if he prevailed. Id. at 737, 104 S'.Ct. 1387.