**State of KANSAS, et al., Petitioners**

v.

**ENVIRONMENTAL PROTECTION AGENCY and Gina McCarthy, Respondents.**

No. 14–1268.

United States Court of Appeals, District of Columbia Circuit.

April 15, 2016.

Jeffrey Allyn Chanay, Burke William Griggs, Office of the Attorney General, State of Kansas, Topeka, KS, C. Boyden Gray, Adam Rabun Fast Gustafson, Adam Jeffrey White, Boyden Gray & Associates, PLLC, Washington, DC, Justin D. Lavene, Esquire, Jon Cumberland Bruning, Katherine Jean Spohn, Office of the Attorney General, State of Nebraska, Lincoln, NE, for Petitioners.

Justin David Heminger, John Charles Cruden, U.S. Department of Justice, Washington, DC, for Respondents.

Before: MILLETT and WILKINS, Circuit Judges, and RANDOLPH, Senior Circuit Judge.

## JUDGMENT

PER CURIAM.

This petition for review of agency action of the Environmental Protection Agency was presented to the Court, and briefed and argued by counsel. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C.Cir. R. 36(d). It is

**ORDERED and ADJUDGED** that the petition be dismissed.

The Environmental Protection Agency ("EPA") develops and periodically revises a computer model used by states to estimate motor vehicle emissions when developing their strategies to achieve compliance with federal air quality standards under the Clean Air Act ("CAA"). *See* 42 U.S.C. §§ 7430, 7502(c)(3). The latest model is called the Motor Vehicle Emissions Simulator for 2014 ("MOVES2014"). Official Release of the MOVES2014 Motor Vehicle Emissions Model for SIPs and Transportation Conformity, 79 Fed.Reg. 60,343 (Oct. 7, 2014). Petitioners are two states—Kansas and Nebraska—and two non-profit organizations—Energy Future Coalition and Urban Air Initiative, Inc.— that allege the model violates the Administrative Procedure Act. In their view, MOVES2014 constitutes a legislative rule promulgated without notice and comment,

*see* 5 U.S.C. § 553, and is arbitrary and capricious because it incorporates erroneous assumptions about the effects on vehicle emissions resulting from including ethanol in fuel, *see id.* § 706(2)(A). Petitioners further allege the EPA violated an obligation under 42 U.S.C. § 4365(c)(1) to consult with its Science Advisory Board on the model before its public release.

We first address Petitioners' standing and, finding none, have no occasion to reach the merits of the case. Petitioners' standing primarily turns on whether parts of Kansas and Nebraska will exceed the EPA's latest National Ambient Air Quality Standards ("NAAQS") concerning the maximum permissible concentration levels for ozone in the air. *See* 42 U.S.C. § 7409; National Ambient Air Quality Standards for Ozone, 80 Fed.Reg. 65,292 (Oct. 26, 2015) (codified at 40 C.F.R. § 50.19). The EPA has up to two years after it sets a new standard to determine if a state is in compliance, or out of compliance (called "nonattainment"), with the NAAQS. 42 U.S.C. §§ 7407(d)(1)(A)(i), (d)(1)(B)(i). If a state is in nonattainment, it is required under the CAA to create a state implementation plan ("SIP"). *Id.* §§ 7502(b)-(c). A SIP is essentially a state's blueprint for how it will reduce pollution to attain compliance with the NAAQS. *Id.* §§ 7410, 7502. Kansas and Nebraska maintain that they will soon be in nonattainment for ozone and therefore will be required to develop SIPs, and in so doing must use the MOVES2014 model, which will injure them in several different ways.[1] *See* Pet'r Br. 26–30 (asserting that "required use of the MOVES2014 model" will negatively affect their air quality, limit their policy options,

and impose a costly administrative burden).

Standing is of course part of Article III's case or controversy requirement. *See* U.S. Const. art. III, § 2, cl. 1. "[A]ny petitioner alleging only future injuries confronts a significantly more rigorous burden to establish standing." *Chamber of Commerce v. Envt'l Prot. Agency*, 642 F.3d 192, 200 (D.C.Cir.2011) (quoting *United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 913 (D.C.Cir. 1989)). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus,* —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (quoting *Clapper v. Amnesty Int'l USA,* —— U.S. ——, 133 S.Ct. 1138, 1147, 1150 n. 5, 185 L.Ed.2d 264 (2013)). The future injury in question here is the likelihood of State Petitioners' nonattainment designations; without such designations, they will not have to use MOVES2014 to develop nonattainment SIPs.

Kansas and Nebraska filed their petition for review in December 2014, before the EPA's new ozone standard was finalized. In support, Kansas submitted an affidavit based on data from 2012–2014 claiming that if the EPA set the new NAAQS at 0.070 parts per million ("ppm"), certain areas within their borders would exceed that standard. According to the Nebraska affidavit, "recent" data indicated the State "may be in nonattainment" with any new standard. In October 2015, the EPA set the primary standard at 0.070 ppm. 80 Fed.Reg. at 65,452.

---

1. In a Rule 28(j) letter, Petitioners offered us new ideas about the various ways the CAA requires them to use MOVES2014, which we reject. *See Texas v. Envt'l Prot. Agency,* 726 F.3d 180, 198 (D.C.Cir.2013) ("The petitioner bears the burden of averring facts in its opening brief establishing [standing].").

Petitioners have not satisfied their burden at this stage in the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Sierra Club v. Envt'l Prot. Agency*, 292 F.3d 895, 899 (D.C.Cir.2002) ("The petitioner's burden of production in the court of appeals is . . . the same as that of a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing by affidavit or other evidence.") (quotation marks omitted). Nebraska's affidavit, with its " 'general averments' and 'conclusory allegations' " of possible nonattainment, is insufficient. *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 242 (D.C.Cir.2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)) (rejecting affidavit that alleged harm "may recur"). Even if phrased more definitively, Nebraska would face the same problem as Kansas: following oral argument, the government supplemented the record with evidence showing that much of the data on which it will rely to determine if State Petitioners will be required to develop SIPs does not yet exist. The EPA plans to use data from 2014 through 2016 "for initial area designation decisions made in October 2017," 80 Fed.Reg. at 65,412, but the data that is available and final—so far only for 2014—shows that Kansas' and Nebraska's ozone levels will not exceed the NAAQS. Nebraska appears to concede this point outright, and Kansas admits the government's evidence undercuts its own. *See* Brunetti Supp. Decl. (¶ 6) (confessing "unusually low" ozone levels "in 2014 and 2015"). With the only evidence showing no impending nonattainment designation, Petitioners' primary standing theory fails. *See Halkin v. Helms*, 690 F.2d 977, 999 (D.C.Cir.1982) (reasoning that "[a]lthough standing generally is a matter dealt with at the earliest stages of litigation . . . it

sometimes remains to be seen whether the factual allegations of the complaint necessary for standing will be supported" by later-adduced evidence (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115 n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979))); *cf. R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 810 F.3d 827, 830 (D.C.Cir.2016) (explaining claim not justiciable "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998))).

Petitioners' secondary standing theories are similarly too speculative. Petitioners maintain that some unidentified "neighboring States" will use MOVES2014, which will lead those states to limit ethanol blending in their fuels, which "may" increase emissions of harmful pollutants, and therefore damage the health and welfare of the citizens of Kansas and Nebraska. *See* Brunetti Decl. at A–3 (¶ 18); Pet'r Br. 26. Equally hypothetical is Petitioners' belief that other states' use of the model will lead to a nationwide decrease in the demand for ethanol, thereby depressing the price of ethanol, and then the corn from which it is made, which will decrease Kansas' and Nebraska's tax revenue. *See* Pet'r Br. 27–28. While Petitioners focus on convincing us that decreased air quality and lost tax revenue are cognizable injuries, they miss the point that they have not provided the requisite evidence of these pernicious effects to survive the summary judgment standard. *See Sierra Club*, 292 F.3d at 899. The ways in which they claim MOVES2014 injures them are far too remote, at least at this point in time. *See Sierra Club de Puerto Rico v. Envt'l Prot. Agency*, 815 F.3d 22, 27–28 (D.C.Cir.2016) (indicating that "a factual development," such as a nonattainment designation, could

constitute an after-arising ground resetting the sixty-day filing period under 42 U.S.C. § 7607(b)(1)).

For the forgoing reasons, and also considering that the Non–Profit Petitioners offer no argument or evidence for why they independently possess standing, we dismiss the petition for lack of jurisdiction. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* FED. R.APP. P. 41(b); D.C.CIR. R. 41.