# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2019, 10:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Isabella H. Bravo
Monroe County Public Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of K.F. (Minor Child), a child in need of services;

K.J. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 30, 2019

Court of Appeals Case No.
19A-JC-1409

Appeal from the Monroe Circuit Court

The Honorable Holly M. Harvey, Judge

Trial Court Cause No.
53C06-1810-JC-806

**Pyle, Judge.**

# Statement of the Case

K.J. ("Mother") appeals the trial court's dispositional order issued following the adjudication of her son, K.F., ("K.F."), as being a Child in Need of Services ("CHINS"). Mother specifically argues that the trial court abused its discretion in admitting Court-Appointed Special Advocate Cynthia York's ("CASA York") dispositional report (CASA York's report) into evidence at the dispositional hearing. She asks this Court to order the redaction of CASA York's report, the testimonial record of the dispositional hearing, and the trial court's dispositional order. According to Mother, the information that she seeks to have redacted could potentially lead to the termination of her parental rights in a future proceeding. Concluding that this issue is not ripe for review, we dismiss the appeal.

We dismiss.

# Issue

Whether this appeal should be dismissed because the issue is not ripe for review?

# Facts

The evidence most favorable to the CHINS adjudication reveals that Mother is the parent of K.F., who was born in January 2012. In October 2018, Department of Child Services ("DCS") filed a petition alleging that K.F. was a CHINS. At the CHINS factfinding hearing, sole witness DCS Family Case Manager Lorinda Walker ("FCM Walker"), testified that earlier that month,

K.F. had walked to school barefoot at approximately 6:15 p.m. According to FCM Walker, Mother had been contacted, and when she had arrived at the school, she had grabbed K.F., pulled him into the car, and told him he was "going to get a whipping." (Tr. 32). FCM Walker further testified that K.F. had not attended school the following day. In addition, FCM Walker testified that two days later, K.F. had disclosed that he had been "whipped." (Tr. 32). According to FCM Walker, K.F. had had bruises on his upper arm and lower back. Lastly, FCM Walker testified that Mother had been charged with battery on a minor and neglect of a dependent and that K.F. had been placed in foster care.

[4] Following FCM Walker's testimony, the trial court "[found] that [K.F. was] a [CHINS] and that the coercive intervention of the Court [was] required[.]" (Tr. 36). Thereafter the parties discussed scheduling the dispositional hearing. During the discussion, Mother's counsel agreed to CASA York submitting her report at the dispositional hearing.

[5] At the March 2019 dispositional hearing, FCM Walker testified that she recommended that Mother complete a "clinical interview and assessment" and meet with a therapist. (Tr. 61). FCM Walker also testified that since the hearing earlier that month, DCS had had some new concerns during visitation where Mother "acknowledged that she [had gone] too far with punishing [K.F.]." (Tr. 64). In addition, there had "also been a few instances of what the visit supervisor ha[d] stated as intimidation." (Tr. 64). Further, there were "a few occasions of [K.F.] asking [Mother] to stop when she was tickling him and

then her not stopping and then one instance where the visit supervisor believed [Mother had] pulled on his hair." (Tr. 64).

[6] Also at the hearing, CASA York testified that the sources of information for her report were FCM Walker, the visitation supervisor, K.F.'s therapist, the home-based case manager, the foster parents, K.F.'s teacher ("K.F.'s teacher"), K.F.'s school social worker ("K.F.'s school social worker"), Mother, and K.F. CASA York further testified as follows regarding "[w]hat was currently happening with [K.F.]":

> [K.F.] is acting out at school, ah, right now. He, um, had, he initially had adjusted very well to foster care. In fact, um, the foster mother said she'd never seen a child adjust so fast and they had had numerous children. Um, now he's, he's acting out a lot at school. He seems to be, um, angry[.] He, um, has, does not get along well with other children at school[.] He, um, has, ah, tortured a cat in their house. Was mean, intentionally to a cat that he was previously fond of.

(Tr. 76, 77). Based on these behaviors, CASA York believed that K.F. required ongoing therapy.

[7] CASA York also testified that K.F. had reported additional incidents of physical abuse that had occurred in his mother's home. Specifically, according to CASA York, K.F. had told his foster parents that Mother had hit him with a charger cord, a wooden spoon, and a hanger. CASA York further testified that when she had asked Mother "what misbehaviors would rise to the level to deserve these things," Mother responded that K.F. had played video games

before doing his homework and had not done his chores. (Tr. 77). From discussions with Mother, it appeared to CASA York that Mother still believed that this method of discipline was appropriate. CASA York also recommended that Mother attend therapy and suggested that Mother's therapist help Mother to understand that hitting K.F. with objects was not an appropriate way to discipline a child.

[8] Following CASA York's testimony, her counsel offered CASA York's report into evidence. Mother objected. Mother's counsel then asked CASA York whether she had had contact with the sources for the report before the fact-finding hearing. CASA York responded that she had definitely spoken with K.F.'s teacher and school social worker before the fact-finding hearing. However, CASA York was not certain whether she had spoken with K.F.'s foster parents or therapist before the fact-finding hearing. Mother again objected to the admission of CASA York's report. She specifically argued that any information CASA York had learned before the fact-finding hearing that had not been disclosed at the fact-finding hearing but had been included in her dispositional report was not admissible. Mother specifically explained as follows:

> I believe that CASA's report, um, describes a circumstance outside, beyond that described in the, ah, CHINS order. And the issue is that there is extensive information that hadn't, that wasn't vetted, that didn't go through the evidentiary process, um, to be adjudicated and to be, and to be included in the fact-finding order. And so, that was available to CASA prior to the fact-finding. And so, I understand if there are circumstances that

came to light between the fact-finding and the dispositional and, um, [K.F.'s] status here, ah, today, um, that CASA testified to saying that he has, ah, since being placed with foster care today now he's adjusted. All of those are changed circumstances since the fact-finding, but, but the extensive information in the CASA's report contains information that was, facts were available to CASA prior, available to CASA and DCS prior to.

(Tr. 83-84). Mother, who never specified the exact facts that were: (1) available to CASA York before the fact-finding hearing; (2) not disclosed at the fact-finding hearing; and (3) disclosed in CASA York's report, sought to exclude CASA York's complete report. The trial court admitted CASA York's report over Mother's objection.

[9] In May 2019, the trial court issued a written dispositional order, which ordered Mother to complete a psychological evaluation. The order also provided that DCS would locate and schedule a therapist for Mother that was consistent with Mother's list of preferred therapists even if the therapist was outside current DCS contracts. The trial court also ordered DCS to continue to offer individual therapy for K.F. Mother now appeals the dispositional order.

## Decision

[10] At the outset, we note that Mother is not challenging the adjudication of her son as a CHINS. She is also not challenging the services that the trial court ordered her to complete. In fact, Mother concedes that the "CASA's chosen procedure in this matter did not result in a different set of ordered services or programs, since [the] CASA essentially adopted the recommendations of DCS,

and DCS simply relied on the evidence presented at the fact-finding."
(Mother's Br. at 230.

[11]     Mother's sole challenge is to the inclusion of specific facts in CASA York's report.  At the dispositional hearing, Mother argued that the entire report should be excluded from evidence.  On appeal, however, she seeks only an order to redact specific facts that she believes that CASA York had obtained before the fact-finding hearing but did not disclose until the dispositional hearing.  Our review of Mother's requested redaction includes information that K.F.'s foster parents had given to CASA York regarding additional abuse that he may have suffered at the hands of Mother.  She seeks redaction of this information not because she challenges its veracity but because she believes that this information could potentially lead to the termination of her parental rights in a possible future proceeding.  Specifically, Mother argues that although "[t]o some, such a remedy may seem trivial, but to a Mother yearning and working to reunite with her son, such a remedy could be the difference between family unity and termination."  (Mother's Br. at 26).

[12]     However, a court may not review an issue that is not ripe.  *Garau Germano, P.C. v. Robertson*, 133 N.E.3d 161, 167 (Ind. Ct. App. 2019).  A claim is not ripe for adjudication if it rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Id.* at 168 (citing *Texas v. United States*, 523 U.S. 296, 300 (1988)).  Here, DCS filing a petition to terminate Mother's parental rights is a contingent future event that may not occur at all.  Because Mother's issue is not ripe for review, we dismiss the appeal.

Dismissed.

Robb, J., and Mathias, J., concur.